30 F.3d 136
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald HAHN, Defendant-Appellant.
 No. 93-3920.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 14, 1994.[1]
Decided July 26, 1994.
 
 Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Donald Hahn appeals from the sentence of three concurrent terms of 38 months' imprisonment that he received after pleading guilty to one count of conspiracy to possess items stolen from the United States mail (18 U.S.C. Sec. 371), one count of possession of stolen mail matter (18 U.S.C. Sec. 1708), and one count of bank fraud (18 U.S.C. Sec. 1344).[2] Hahn contends that his sentence should not have been enhanced by four levels under the United States Sentencing Guideline (U.S.S.G.) Sec. 3B1.1(a) for being the organizer or leader of the criminal activity.
 
 
 2
 A defendant's role in an offense is a question of fact. United States v. Colello, 16 F.3d 193, 195 (7th Cir.1994). We will reverse such a determination only if it is clearly erroneous. Id. The application note to Sec. 3B1.1 lists factors the court may consider, including "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. Sec. 3B1.1, comment (n. 3).
 
 
 3
 Defendant complains that he did not manage or direct any of the participants in the conspiracy. His direct control of codefendants is not required, however, to qualify for enhancement under this guideline. United States v. Carson, 9 F.3d 576, 585 (7th Cir.1993), citing United States v. Paulino, 935 F.2d 739, 758 (6th Cir.), cert. denied, 112 S.Ct. 315 (1991). We have held that defendant's failure to exercise direct control over other participants does not preclude a Sec. 3B1.1 enhancement. United States v. Skinner, 986 F.2d 1091, 1097-99 (7th Cir.1993). " 'Control over others' is undoubtedly a compelling factor," but "inordinate emphasis ought not be placed on this single factor" where other factors indicate that "defendant is more responsible than his co-defendants for the commission of the offense." Skinner, 986 F.2d at 1099. The enhancement is "not limited to cases in which the defendant supervised one or more underlings" and it is enough that "defendant played a leadership as distinct from a followership role." United States v. Morales, 994 F.2d 386, 388 (7th Cir.1993).
 
 
 4
 There was no clear error in the district court's finding that defendant was more responsible than other members of the conspiracy. Defendant brought expertise to the group and thereby became "the most culpable person in the conspiracy." Skinner, 986 F.2d at 1099. Hahn spent two years in prison for stealing mail and performing split deposits.[3] He was released December 8, 1992. Within weeks, Hahn returned to the business of stealing mail and performing split deposits,[4] but this time he passed his expertise on to friends. In January 1993, Jacob Bialescki, and later three other friends, Thomas Bartley, Todd Kollar and Joel Ferguson, approached Hahn, said they needed money, and asked how to do split deposits.[5]
 
 
 5
 Under Hahn's tutelage, Jacob Bialescki began stealing checks, bank statements and other items. They stole from 50 to 100 mailboxes, and then used the stolen mail to perform split deposits. Hahn would have Bialescki perform split deposits in the drive-throughs of various banks, since Hahn believed two people in the car would look more suspicious. Hahn maintained records of the account numbers used in the split deposits. Hahn also gave stolen blank checks to Ferguson, Bartley and Kollar. Hahn told his friends how mail could be stolen from a mail bag at a drug store. In addition, Hahn provided Bartley with false identification to help him cash stolen checks, and explained to the codefendant how to make false identification cards.
 
 
 6
 The district court could properly find from this evidence that Hahn was "the genesis" of the conspiracy since he "drew in other people to the ongoing criminal activity" and provided the "criminal know-how" that was crucial to the conspiracy's success. See United States v. Ramacci, 15 F.3d 75, 79 (7th Cir.1994) (upholding enhancement for "organizer"; "absent Mr. Ramacci, Torres and Baker would not have become involved in the counterfeiting scheme"). None of Hahn's codefendants had ever stolen or forged checks prior to working with Hahn. Bartley testified that he saw Hahn as the leader of group in the sense that "he was the one who knew how to get the checks and how to use them." Before meeting Hahn, Bartley "never knew anything about this. I never even thought of anything like this before I met him."
 
 
 7
 Most telling is Hahn's own testimony at the sentencing hearing when he apologized to codefendant Ferguson's parents:
 
 
 8
 "I've grown up with him all my life and I do feel bad for bringing the people in because as it's going right now, if it wouldn't have been for me, none of these people would be involved in this, so I would just like to say I'm sorry to them...."
 
 
 9
 It is true that Hahn did not accompany some of the codefendants when they passed forged checks to merchants. Nevertheless, it was Hahn who provided the codefendants with some of the blank checks, told them how to steal other blank checks, and gave them the confidence and information necessary for them to pass forged checks. See United States v. Brown, 900 F.2d 1098, 1102 (7th Cir.1990) (upholding enhancement for role in offense in stolen check scheme; while defendant argued that she did not set up scheme, recruit participants, steal the checks or claim a larger share of the profits, the court found that she did coach the participants, she had connections to key postal inspectors, she decided how the proceeds were to be split, and she "made possible a scheme that without her unique role as a dual agent could not be carried out").
 
 
 10
 Hahn maintains that this was no more than a "loose group of friends who acted to satisfy their own material needs not those of Donald Hahn."[6] He merely "provid[ed] information" to the others. The whole point of enhancement for role in the offense, however, is to discern the relative responsibility such that the sentences would reflect a defendant's "greater contributions to the illegal scheme." United States v. Brown, 944 F.2d at 1381. Whether the members of the conspiracy were friends casually committing crimes to satisfy their own material needs is only one factor that might reveal the relative responsibility of each member of the group.
 
 
 11
 We also find no clear error in the district court's alternate finding under U.S.S.G. Sec. 3B1.1(a) that the criminal enterprise was "otherwise extensive." The ongoing criminal activities stretched over six months; mail was stolen from a minimum of 50 to 100 different mailboxes; nearly $20,000 was lost from the split deposits; and the criminal transactions were both numerous and of a wide variety.
 
 
 12
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [2]
 These three concurrent terms were to run consecutively to a sentence of imprisonment that was imposed as the result of the revocation of supervised release in a prior case
 
 
 [3]
 Split deposits result from stealing a check and bank account number from someone's mail, going to their bank and depositing part of the check into their account, and then asking for the remainder back in cash. Defendant was convicted for bank fraud, conspiracy to commit access device fraud and theft from the mail
 
 
 [4]
 This repeat performance is exactly what the Sentencing Commission was concerned about, i.e., that leaders or organizers "present a greater danger to the public and/or are more likely to recidivate." U.S.S.G. Sec. 3B1.1, comment (backg'd)
 
 
 [5]
 Bartley testified that he viewed Hahn as the group's leader. But Ferguson and Bartley also testified that Hahn did not direct or control them, and they had never heard Hahn give directions to Bialescki
 
 
 [6]
 Similarly, Bartley testified that the dynamics of the group was simply to hang out at the apartment where Hahn and Bialescki lived, drink alcohol and take drugs. Sometimes they would get hungry, someone would take out a stolen check and they would order pizza. Other times, one or more of them would go shopping for things like clothes, CD's, speakers, tapes, or use the money to rent a car, stay at a hotel, or go to Great America amusement park