52 F.3d 327
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Deron Michael MORRIS, Defendant-Appellant.
 No. 94-3808.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1995.
 
 Before: LIVELY, RYAN and DAUGHTREY, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The defendant, Deron Michael Morris, appeals his sentence entered after he pleaded guilty to one count of conspiracy to steal United States mail, and to forge and cash stolen United States Treasury checks, in violation of 18 U.S.C. Sec. 371. On appeal, Morris challenges: (1) the sentencing guideline applied to set his base offense level; (2) the amount of "loss" used to set the specific offense characteristic increase; (3) the increase in offense level for acting as the organizer or leader of criminal activity involving five or more participants; and (4) the imposition of a $500 fine. We affirm the sentence in its entirety.
 
 I.
 
 2
 On March 11, 1994, Morris pleaded guilty to Count 1 of a 29-count indictment. Count 1 alleged that, sometime in July 1993, Morris conspired to steal United States mail, and to forge and cash stolen United States Treasury checks. The conspiracy involved Morris, Tracy Borgman, Mark Goodman, Joseph Stiver, Jim Luken, and two male juveniles. Morris admitted that he was approached by some of the conspirators for information on how to steal from a Postal Service vehicle; these inquisitive fellows knew that Morris had broken into a Postal Service vehicle in 1988. The conspirators sought to steal Treasury checks, and then provide them to coconspirators who would obtain false identification and cash the checks.
 
 
 3
 On August 3, 1993, the six male conspirators searched Cincinnati, Ohio for a postal vehicle; Morris and one of the juveniles rode in one car, while Goodman, Stiver, Luken, and the other juvenile rode in another. When they found the postal vehicle, Luken broke the vehicle's window with a hammer handed to him by Morris. One of the juveniles then took two bundles of mail. Morris observed and directed the break-in.
 
 
 4
 The two bundles contained fourteen Treasury checks. The inspectors traced the checks and determined that the checks totalled $7426. However, only two checks were recovered. The first was a check for $671 which Morris and one of the juveniles gave to Borgman. Morris told Borgman how to obtain false identification. Borgman then used the check to purchase approximately $200 in groceries. She gave Morris and one of the juveniles the remaining $400. The other check that was recovered was for $795. Morris and one of the juveniles gave the $795 check to Goodman. Morris instructed Goodman on how to obtain false identification, which Goodman successfully obtained. Postal inspectors recovered the $795 check from Goodman before he could cash it. However, according to Goodman, if he had cashed the check, the proceeds would have gone to Morris and one of the juveniles.
 
 
 5
 After a local television broadcast reported the break-in, postal inspectors received tips leading them to Morris. Arrest of all the principals followed. On January 17, 1994, Borgman and Goodman pleaded guilty to possession of stolen mail. On March 12, 1994, Stiver pleaded guilty to conspiracy to steal United States mail, and to forge and cash stolen Treasury checks. Morris pleaded guilty on March 11, 1994. As of April 1994, the cases involving the two juveniles were winding their way through Ohio state courts. Luken passed away before being charged.
 
 
 6
 On July 15, 1994, the district court held Morris's sentencing hearing. At the hearing, the court rejected the defendant's proposal to apply U.S.S.G. Sec. 2B1.1(b)(4) rather than Sec. 2B1.1(b)(1). In addition, the court attributed a $7426 "loss" to the defendant under Sec. 2B1.1(b)(1). Finally, the court found that Morris was an organizer or leader of criminal activity involving five or more participants under Sec. 3B1.1(a). Ultimately, the court fixed Morris's offense level at 10 and his criminal history category at VI, resulting in a sentencing range of 24-30 months. The court sentenced Morris to 30 months confinement and imposed a $500 fine; the defendant had not objected to the presentence report's recommendation to assess some minimum fine. The defendant filed this timely appeal.
 
 II.
 A. Base Offense Level Guideline
 
 7
 The district court's choice of the applicable guideline section is a question of law, and thus reviewed de novo. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991).
 
 It is a federal crime
 
 8
 [i]f two or more persons conspire either to commit any offense against the United States, or the defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy....
 
 
 9
 18 U.S.C. Sec. 371. The sentencing guidelines refer violations of 18 U.S.C. Sec. 371 to four guideline sections. Three sections apply to conspiracies involving murder, public officials, or a conspiracy to defeat a tax. The fourth is the general conspiracy guideline section, Sec. 2X1.1, which instructs the court to apply "the guideline of the substantive offense." Here, the "substantive offense" is theft and transferring stolen property, punishable under Sec. 2B1.1. Section 2B1.1(a) provides for a base offense level of 4. Section 2B1.1(b)(1) increases the offense level according to the "loss" attributable to the defendant. If the "loss" falls between $5000 and $10,000, the offense level increases by 4. In addition, Sec. 2B1.1(b)(4) provides:
 
 
 10
 If (A) undelivered United States mail was taken ...; or (B) the stolen property received, transported, transferred, transmitted, or possessed was undelivered United States mail, and the offense level as determined above is less than level 6, increase to level 6.
 
 
 11
 (Emphasis added.)
 
 
 12
 We conclude that the district court correctly applied Sec. 2B1.1(b)(1) instead of Sec. 2B1.1(b)(4). The text of Sec. 2B1.1(b)(4) makes clear that the subsection applies only where the defendant's offense level, as computed under Sec. 2B1.1(b)(1), is less than 6. Here, the district court computed the offense level as 8 under Sec. 2B1.1(b)(1)--a base offense level of 4, and another 4 points for the specific offense characteristic of amount of "loss." Thus, assuming the "loss" increase of 4 is correct, see Part II.B infra, the district court correctly applied Sec. 2B1.1(b)(1).
 
 B. Amount of Loss
 
 13
 At the sentencing hearing, the defendant challenged the presentence report's finding that Morris was responsible for a $7426 loss. The presentence report's author appeared at the sentencing hearing, and explained the finding to the district court:
 
 
 14
 [Probation Officer]: .... In my conversation with the investigating Postal Inspector, he determined in his investigation that there were a total of fourteen checks taken from the postal vehicle. One was actually cashed. One was recovered from Mark Goodman before it was cashed. And the Postal Inspector, upon doing a trace of the mail that was stolen, received an identification of the other twelve checks involved. So, therefore, there was a total of fourteen checks taken from the mail vehicle ... and these checks total $7,426.
 
 
 15
 THE COURT: And the other checks haven't been recovered?
 
 
 16
 [Probation Officer]: Initially, the twelve checks were destroyed by members of the conspiracy. The Postal Inspector then put out a trace and subsequently duplicate checks were issued, so that's how we were able to determine the total amount of the fourteen checks.
 
 
 17
 (Emphases added.)
 
 
 18
 This court reviews the district court's finding of "loss" for clear error only. See United States v. Kohlbach, 38 F.3d 832, 841 (6th Cir.1994). Section 2B1.1(b)(1) provides for increases to the offense level for the specific offense characteristic of "loss." If the computed loss is more than $5000 but less than $10,000, then the level is increased by 4. Sec. 2B1.1(b)(1)(E).
 
 
 19
 Application Note 1 to Sec. 2B1.1 defines "loss" as "the value of the property taken, damaged, or destroyed. Sec. 2B1.1, (comment.) (n. 1). As an example, the application note explains: "In the case of a theft of a check ..., the loss is the loss that would have occurred if the check ... had been cashed." Sec. 2B1.1, (comment.) (n. 1); United States v. Hallman, 23 F.3d 821, 824 (3d Cir.), cert. denied, 115 S.Ct. 216 (1994).
 
 
 20
 Under the relevant statutory and guideline sections, a district court may rely, for sentencing purposes, upon information that would not have been admissible at trial. The criminal code provides that "[n]o limitation shall be placed on the information concerning the ... [defendant's] conduct" which the district court may consider for sentencing purposes. 18 U.S.C. Sec. 3661. Similarly, the sentencing guidelines state that "the court may consider relevant information without regard to its admissibility ... at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." Sec. 6A1.3, p.s.
 
 
 21
 In light of these provisions, in United States v. Silverman, 976 F.2d 1502 (6th Cir.1992), cert. denied, 113 S.Ct. 1595 (1993), this court held that "[s]o long as the evidence in the presentence report bears 'some minimal indicia of reliability in respect of defendant's right to due process,' the district court ... may ... consider and rely on hearsay evidence without any confrontation requirement." Id. at 1511 (emphasis added) (quoting United States v. Robinson, 898 F.2d 1111, 1115 (6th Cir.1990)). Indeed, it is even permissible to consider "hearsay, even 'second hand' hearsay, from informants and unidentified sources in presentence reports, without confrontation, if the district court finds" sufficient indicia of reliability. Id. at 1513. If the defendant challenges evidence considered by the district court, then "the defendant must establish that the challenged evidence is materially false or unreliable." Id. at 1512.
 
 
 22
 We conclude that the district court committed no clear error in finding that Morris was accountable for a $7426 "loss" under Sec. 2B1.1(b)(1). To be sure, it would have been preferable had the government explained in detail the postal inspector's canvass and Treasury Department records at the sentencing hearing, rather than leave the detailed explanation to its brief on appeal. However, the probation officer did explain at the sentencing hearing that the postal inspectors had determined which checks were stolen after initiating a "trace." Also, the probation officer explained that "duplicate checks" were issued for those that were stolen, and by that method, the government was able to compute the $7426 loss amount. In light of the breadth of information usable for sentencing purposes, we conclude that these procedures were sufficiently reliable to serve as sentencing information in this case. The district court did not clearly err in increasing the offense level by 4 due to a $7426 loss.
 
 C. Organizer or Leader Increase
 
 23
 In order to increase a defendant's offense level under Sec. 3B1.1(a), the government must prove by a preponderance of the evidence that the defendant was an organizer or leader of a criminal activity involving five or more participants. See United States v. Castro, 908 F.2d 85, 90 (6th Cir.1990). This factual finding is reviewed for clear error. See United States v. Williams, 962 F.2d 1218, 1226 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992). In determining whether Sec. 3B1.1(a)'s 4-level increase applies,
 
 
 24
 [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 25
 Sec. 3B1.1 (comment.) (n. 4); United States v. Jackson, 25 F.3d 327, 331 (6th Cir.), cert. denied, 115 S.Ct. 344 (1994).
 
 
 26
 We conclude that the district court did not clearly err in finding that the defendant's role in the offense warranted an increase in his offense level under Sec. 3B1.1(a). Although much of the information supporting the "organizer or leader" finding was hearsay evidence, it was sufficiently reliable for sentencing. The stories of the coconspirators were consistent in describing Morris's actions. Applying the relevant factors to this case, the evidence showed that Morris told the coconspirators how to steal from a mail delivery vehicle, and provided the hammer for the break-in. Morris gave stolen checks to Borgman and Goodman, and Morris instructed Borgman and Goodman on how to obtain false identifications. Also, Borgman gave Morris the over-$400 in change from the cashed stolen check, and Goodman would have given Morris the proceeds had the second stolen check been successfully cashed. These facts support the district court's finding of an "organizer or leader" role.
 
 D. Fine
 
 27
 The presentence report recommended imposing some minimal fine that the defendant could pay through prison work programs. The defendant failed to object to the recommendation. Failure to object to the imposition of a fine at sentencing constitutes a waiver of the issue for review on appeal. United States v. Tosca, 18 F.3d 1352, 1355 (6th Cir.1994) (citing United States v. Nagi, 947 F.2d 211, 213 (6th Cir.), cert. denied, 112 S.Ct. 2309 (1992)). We also decline to notice the imposition of the fine as a plain error.
 
 III.
 
 28
 We AFFIRM the district court's sentence in its entirety.