**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

    v.

ELDA LOUISE SPEARS,

    Defendant-Appellant.

No. 98-5226

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

    v.

LINDA LEE CHAMBERS,

    Defendant-Appellant.

No. 98-5230

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 98-CR-70-H)

---

Submitted on the briefs:

F. Randolph Lynn and R. Thomas Seymour, Tulsa, Oklahoma, for Defendant-Appellant Elda Louise Spears.

Jack Marwood Short, Tulsa, Oklahoma, for Defendant-Appellant Linda Lee Chambers.

Stephen K. Lewis, United States Attorney, Phil Pinnell, and John D. Russell, Assistant United States Attorneys, Tulsa, Oklahoma, for Plaintiff-Appellee.

Before **BALDOCK** and **BRISCOE**, Circuit Judges, and **CROW**, Senior District Judge.[*]

**BALDOCK**, Circuit Judge.

Defendants Elda Louise Spears and Linda Lee Chambers each pled guilty to one count of conspiracy in violation of 18 U.S.C. § 371. At their respective sentencing hearings, the district court found that each Defendant was an "organizer or leader" of the conspiracy under U.S.S.G. § 3B1.1(a) and increased their base offense levels by four points. Defendants filed separate appeals, which we consolidated. On appeal, Spears argues that the district court did not make adequate findings to support the organizer/leader sentencing enhancement. Chambers argues that the district court did not have enough evidence before it to find that she was an organizer or leader. Additionally, Chambers argues that the

[*] The Honorable Sam A. Crow, Senior District Judge for the District of Kansas, sitting by designation.

After examining the briefs and appellate record, the panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2)(c); 10th Cir. R. 34.1(G). This case is therefore ordered submitted without oral argument.

district court violated her right to be present at a presentence hearing in Spears's case. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We remand Spears's sentence to the district court with instructions to make more specific fact findings and affirm Chambers's sentence.

I.

The record indicates that Spears and Chambers were members of a conspiracy to steal checks, credit cards, and identifications from mailboxes. Teams of two or more conspirators drove around rural neighborhoods looking for mailboxes that could not be seen from a house. Upon finding a suitable mailbox, the driver pulled over; the co-conspirator riding shotgun opened the mailbox and collected the checks, credit cards, and identification. A conspirator then forged the necessary endorsements and signatures on the checks and credit cards. Next, another team cashed the checks at a bank or used the checks or credit cards at a motel or restaurant. Finally, the conspirators divided the proceeds.

The record does not specify who originated the idea of stealing mail. At sentencing, Defendant Spears testified about the night before the conspirators began stealing mail: "Well, really we're just all sitting around. I really don't know who came up with it." Spears said it was not her idea: "Well, I'm saying I know I didn't come up with the idea." She suggested that perhaps the plan started with co-conspirator Deborah Atkins, who on prior occasions had tried to pass

stolen checks. Spears later admitted, however, that Atkins had less responsibility in the conspiracy than Spears or Chambers.

The record is also unclear about who was responsible for the day-to-day decisions of the conspirators. Michael Duroy, a co-conspirator and Defendant Chambers's common law husband, testified at a presentence evidentiary hearing that "Linda [Chambers] and Elda [Spears] were pretty much figuring out everything to do." Duroy saw Spears and Chambers stealing and cashing checks, but never saw the other members of the conspiracy do so. By contrast, Spears's testimony suggests that she and Chambers had no special decision making authority about when to steal mail. "We'd just be sitting around and decide to go do it." Defendants' presentence reports refer to a notebook that listed which checks they cashed and where; Spears, however, testified that no such list existed.

Visiting the mailboxes was a group activity. The conspirators used several vehicles: Spears's car, Chambers's car, co-defendant Deborah Atkins' car, and "a lady named Sherry's truck." Spears testified, "Sometimes I drove, sometimes Linda [Chambers] drove and one time Debbie [Atkins] drove." When someone else was driving, Spears took the mail out of the mailboxes. The driver generally decided which mailboxes to search, but the other riders in the car suggested where to turn and when to stop.

Many of the conspirators participated in cashing the checks. All of the conspirators except Defendant Spears (because of her poor handwriting) played a role in forging signatures on checks and credit cards. Spears testified that the conspirators jointly decided where to cash the checks. The conspirators went in groups to banks' drive-in windows to cash the checks. Duroy testified that he rode in the car with Chambers when she cashed stolen checks at drive-in windows.

The record suggests that Spears and Chambers sometimes distributed stolen mail to other conspirators. Spears provided Chambers with stolen checks for her and Duroy to cash. Spears provided Chambers with a stolen driver's license for the purpose of cashing stolen checks; also, Spears and Chambers together bought a fake ID for cashing checks. Chambers also provided Duroy with stolen checks.

The record contains conflicting accounts of how the conspirators divided the proceeds. Spears testified that at the beginning of the conspiracy, she, Chambers, and Atkins split the proceeds in thirds; at that time, Duroy was probably taking part of Chambers's share. Also, Spears testified that after Atkins left the conspiracy, Spears, Chambers, and Duroy each took a third. Duroy testified that Spears and Chambers took equal half shares of the money, and Chambers would share some of her proceeds with Duroy. In her testimony, Spears denied the statement in the presentence report that Spears gave Chambers checks to cash in exchange for half of the proceeds. Sometimes one member–most likely Spears or

-5-

Atkins–would take a larger share and buy drugs for the group, although Spears testified that she never sold drugs. Spears testified that she could not recall the total amount of the proceeds or the size of her share.

Initially, Spears's and Chambers's presentence reports did not contain the sentencing enhancement. The district court, however, was reluctant to sentence either Defendants or their co-conspirators until it had determined the nature of their leadership roles. The record shows that the district court held a presentence hearing, at which time Spears called co-defendant Duroy to testify on her behalf. Although the evidence brought out on cross-examination was damaging to both Spears and Chambers, it appears from the record that Chambers was not present at the presentence hearing. After Duroy testified, the probation officer revised Defendants' presentence reports to conclude that the Defendants were "organizer[s] or leader[s]" under U.S.S.G. § 3B1.1(a). Spears and Chambers objected to their respective reports, arguing that the evidence did not show that they were organizers or leaders; Chambers also argued that she had a right to be present at the presentence hearing. At their respective sentencing hearings, each Defendant presented evidence to rebut the presentence reports' conclusions. Notwithstanding that evidence, the district court found that Defendants were organizers or leaders of the conspiracy and imposed a four-point enhancement in the offense level.

Spears argues that the district court did not made adequate findings to support the organizer/leader sentencing enhancement. "[W]e . . . review the district court's determination that a defendant was an organizer or leader of a criminal activity involving five or more persons for clear error." United States v. Cruz Camacho , 137 F.3d 1220, 1223-24 (10th Cir. 1998). The government must prove by a preponderance of the evidence facts establishing that a defendant was an organizer or leader for purposes of the sentencing enhancement. See Cruz Camacho , 137 F.3d  at 1224.

To support a conclusion that a defendant is an organizer or leader, a district court must make findings in the record that describe the defendant's exercise of control or decision making authority. See United States v. Ivy, 83 F.3d 1266, 1292 (10th Cir. 1996); United States v. Pelliere, 57 F.3d 936, 940 (10th Cir. 1995). With respect to Spears, the district court made the following findings:

> All right. Well, insofar as the organizer/leader testimony in addition to the testimony by a witness that was in fact sponsored to appear on behalf of this defendant, as was earlier stated today, that was merely the starting point, not the foundation in its entirety for a determination of organizer/leader. All other participants were further interviewed to test whether that testimony and whether the indications based on it, both with respect to Ms. Chambers and with respect to Ms. Spears, was accurate and whether there was a factual basis to make a determination of organizer/leader in both cases. And pursuant to that additional investigation, the court finds that there is factual basis to support the finding that Ms. Spears, as well, is an organizer leader in this matter. So that aspect of the motion will be denied.

These findings are inadequate because although they discuss what sources of evidence the district court used to reach its decision, they do not provide a factual basis for the district court's conclusions. "[E]ven if the record evidence overwhelmingly supports the enhancement, appellate fact-finding cannot substitute for the district court's duty to articulate clearly the reasons for the enhancement." United States v. Wacker, 72 F.3d 1453, 1477 (10th Cir. 1995). We remand Spears's sentence to the district court for more specific fact findings on her role as an organizer or leader. See id.

### III.

In her brief, Chambers, unlike Spears, did not raise the issue of the inadequacy of the district court's findings; thus, she has waived the issue. See Hernandez v. Starbuck, 69 F.3d 1089, 1093 (10th Cir. 1995). Instead, Chambers argues that the evidence is insufficient to support the district court's determination that she was an organizer or leader. The district court's fact findings are reviewed for clear error. See Cruz Camacho, 137 F.3d at 1223-24. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).

U.S.S.G. § 3B1.1(a) provides that a defendant's base offense level will be increased by four points "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants." In the commentary to the section, note 4 lists seven factors for determining whether a conspirator was an organizer or leader:

1. The exercise of decision making authority,
2. The nature of the participation in the commission of the offense,
3. The recruitment of accomplices,
4. The claimed right to a larger share of the fruits of the crime,
5. The degree of participation in planning or organizing the offense,
6. The nature and scope of the illegal activity, and
7. The degree of control and authority exercised over others.

Id. § 3B1.1, comment. (n.4). "The gravamen of the enhancement is either the exercise of control over other participants or the organization of others for the purpose of carrying out the crime." United States v. Tagore, 158 F.3d 1124, 1131 (10th Cir. 1998). In conspiracies of more than five persons, a defendant may be a leader even if she only exercises control over one person. See Cruz Camacho, 137 F.3d at 1224. A defendant may be an organizer without actually exercising control over any other person. See Tagore, 158 F.3d at 1131.

In the context of organizers or leaders of conspiracies to steal mail, our sister circuits have affirmed sentence enhancements on records showing the following actions: receiving and selling stolen checks and enlisting co-conspirators, see United States v. Woods, 1996 WL 370177, at *1 (8th Cir. July 5,

1996) (unpublished decision), and instructing co-conspirators on how to steal mail, distributing stolen checks to co-conspirators, instructing co-conspirators on how to get false identification, and giving a co-conspirator a stolen check in exchange for a share of the proceeds, see United States v. Morris, 1995 WL 154900, at *1, *4 (6th Cir. Apr. 6, 1995) (unpublished decision).

We find that the evidence is sufficient to support the district court's finding that Chambers was an organizer or leader. The record shows that she was involved in the conspiracy from the beginning. Chambers recruited other members of the conspiracy and distributed stolen mail to Duroy. She also forged signatures on checks and credit cards, then gave them to other conspirators to cash. Other conspirators accompanied Chambers when collecting mail and cashing checks at drive through windows. The record contains conflicting information that may suggest Chambers took a larger share of the proceeds than her co-defendants, including Duroy. Although reasonable minds may differ as to whether Chambers was an organizer or leader for purposes of sentencing enhancement, we cannot conclude on this record that the district court's ruling constituted clear error.[1]

IV.

---

[1] The concurring and dissenting opinion comes to a different conclusion based on an independent reading of the record. However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. " See Anderson, 470 U.S. at 574.

Chambers also argues that the district court violated her right to be present at the presentence hearing in Spears's case, at which Duroy gave testimony supporting the district court's finding that Chambers was an organizer or leader of the conspiracy. Whether a defendant has a right to be present at a stage of a trial is a legal question which we review de novo. See United States v. Gomez, 67 F.3d 1515, 1528 (10th Cir. 1996).

Criminal defendants have a right to be present at "every stage of the trial." See Fed. R. Crim. P. 43(a). This right includes a defendant's presence at a presentence hearing in a co-defendant's case if the testimony at that hearing will affect the defendant's sentence. See United States v. Youngpeter, 1998 WL 171838 (10th Cir. 1998) (unpublished decision). In Youngpeter, the district court made a finding based on testimony in a co-defendant's case that affected the defendant's sentence; we held that the district court improperly refused to grant the defendant an evidentiary hearing to re-examine the witness and challenge that finding. Id. at *3.

Chambers's case, however, is distinguishable because Chambers had an opportunity to call Duroy to testify in her own case before she was sentenced on October 26, 1998. Spears called Duroy to testify in the presentence hearing on September 17, at which Chambers was not present. On October 1, based on Duroy's testimony, the probation officer prepared the revised presentence report

-11-

recommending the sentencing enhancement. Chambers filed objections to the revised presentence report on October 23, arguing that the district court should have given her an opportunity to cross-examine Duroy at the presentence hearing. Chambers did not, however, call Duroy as a witness at her own sentencing hearing on October 26. Because Chambers has not shown that the district court prevented her from calling Duroy to testify, she has not shown that the district court violated her right to be present at all stages of her trial.

Moreover, the use of testimony from a co-defendant's sentencing proceeding is analogous to the use of testimony from a co-defendant's trial: "[T]he sentencing court 'may consider, without rehearing, evidence introduced at the trial of a codefendant if that evidence is relevant to the issue disputed at the sentencing phase, and if the sentencing judge also presided over the codefendant's trial.'" United States v. Moore, 55 F.3d 1500, 1501-02 (10th Cir. 1994).

Spears's sentence is REMANDED to the district court for more specific fact findings. Chambers's sentence is AFFIRMED.

No. 98-5226, United States v. Spears
No. 98-5230, United States v. Chambers

**BRISCOE** , Circuit Judge, concurring and dissenting:

I concur in part and dissent in part. I agree with the majority's conclusion that Chambers has not shown that her right to be present was violated. However, my review of the record convinces me that the district court committed clear error in finding Spears and Chambers were leaders or organizers under U.S.S.G. § 3B1.1. I would, therefore, remand the cases for resentencing without the leader or organizer enhancements. Because the record contains no evidence to support the enhancement of Spears' sentence, I also dissent from the majority's decision to remand her case for resentencing for the district court's failure to make adequate findings on the record.

The unpublished decisions cited by the majority affirming U.S.S.G. § 3B1.1 sentence enhancements in mail theft conspiracies contain far greater involvement by the defendants at issue than was shown in the present cases. In        United States v. Morris , the defendant told coconspirators how to steal mail from a mail truck, provided the hammer for the break-in, gave stolen checks to other conspirators, told them how to obtain false identification, and received stolen check proceeds. 1995 WL 154900, at *4 (6th Cir. April 6, 1995). In        United States v. Woods   , the defendant received and sold stolen checks, recruited at least ten people, and "prepared an organizational chart showing himself as its leader." 1996 WL 370177, at *1 (8th Cir. July 5, 1996). In        United States v. Hahn   , the defendant had

knowledge about stealing mail and making split deposits (having been previously convicted of those offenses), taught four coconspirators to make split deposits, maintained records of account numbers used in split deposits, gave stolen blank checks to coconspirators, told coconspirators how to steal mail, and provided a coconspirator with false identification and explained how to make false identification cards. 1994 WL 387929, at *1-2 (7th Cir. July 26, 1994). The record here does not contain such evidence against Spears or Chambers.

The record contains no evidence to show which conspirator created the idea of stealing mail or was responsible for decisions of the conspiracy. Most of the coconspirators at some point drove the car while others stole mail, decided which mailbox to search, decided where to cash the stolen checks, and actually cashed those checks. Although Duroy testified that Spears and Chambers were "pretty much figuring out everything to do," Duroy admitted he had no contact with the other conspirators and testified that Spears did not control him. Duroy never testified that Chambers recruited him into the conspiracy. There is no evidence that Chambers recruited anyone into the conspiracy. The notebook that listed cashed checks was never connected to either Spears or Chambers. At most, Spears and Chambers, along with their coconspirators, stole mail from mailboxes, shared stolen checks with coconspirators, cashed the stolen checks, and used the

-2-

stolen credit cards.  Although Spears gave Chambers a stolen driver's license, there was no evidence this was done as an organizer or leader.

We review the district court's finding that Spears and Chambers were organizers or leaders of the conspiracy under the deferential clear error standard. See United States v. Cruz Camacho , 137 F.3d 1220, 1223-24 (10th Cir. 1998). However, the government has the burden to prove by a preponderance of the evidence that Spears and Chambers engaged in organizer or leadership roles.    Id. at 1224.  Further, U.S.S.G. § 3B1.1(a) "is an enhancement for organizers or leaders, *not for important or essential figures* ." United States v. Torres , 53 F.3d 1129, 1142 (10th Cir. 1995) (citations omitted) (emphasis added).  Although Spears and Chambers may have been important or essential figures, the government failed to prove by a preponderance of the evidence that either Spears or Chambers controlled or organized the other members of the conspiracy.  The district court committed clear error in enhancing Spears' and Chambers' sentences as organizers or leaders.   I would remand both cases for resentencing without the leader or organizer enhancements.