**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 13 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

v.

MICHAEL ANTHONY
YOUNGPETER,

 Defendant-Appellant.

No. 97-5142
(D.C. No. 91-CR-50-C)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT** *

Before **PORFILIO** , **KELLY** , and **HENRY** , Circuit Judges.

Michael Anthony Youngpeter appeals the district court's order denying his

request for an evidentiary hearing on his 28 U.S.C. § 2555 habeas petition. For

the reasons discussed below, we reverse the district court's decision and remand

this case for a factual hearing regarding whether the methamphetamine involved

in this case was D- or L-isomer methamphetamine.

---

 *  After examining the briefs and appellate record, this panel has
determined unanimously to grant the parties' request for a decision on the briefs
without oral argument. The case is therefore submitted without oral argument.
This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and
judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# PROCEDURAL HISTORY

After a jury convicted Mr. Youngpeter of conspiring to manufacture, possess, and sell methamphetamine, the United States District Court for the Northern District of Oklahoma sentenced him to 188 months of imprisonment. The district court based this sentence, in part, on its finding that the methamphetamine the government seized was of the D-isomer variety (rather than L-isomer, which carries a lesser sentence).

On direct appeal, this Court affirmed Mr. Youngpeter's conviction and sentence. United States v. Youngpeter, 986 F.2d 349 (10th Cir. 1993). Mr. Youngpeter then filed a 28 U.S.C. § 2255 petition challenging both his conviction and his sentence. The district court denied this petition, and this Court once again affirmed the district court's decision.

In October 1996, this Court decided United States v. Glover, 97 F.3d 1345 (10th Cir. 1996), which involved the § 2255 petitions of two of Mr. Youngpeter's co-defendants, Robert Glover and David Wann. In their petitions, Mr. Glover and Mr. Wann asserted, among other things, that they had received ineffective assistance of counsel. They contended that although the court had sentenced them based on the guidelines applicable to D-isomer methamphetamine, their attorneys had failed to put the government to its proof on the issue of whether the methamphetamine at issue was, in fact, D-isomer. After examining the record, we

concluded that it contained no evidence to support the district court's conclusion that the methamphetamine involved was D-isomer. Accordingly, we granted, in part, Mr. Glover's and Mr. Wann's § 2255 petitions and ordered the district court to conduct evidentiary hearings regarding whether the methamphetamine in question was D-isomer. [1]

Following the Glover decision, we recalled the mandate in Mr. Youngpeter's § 2255 case and remanded the case to the district court for a factual hearing regarding the type of methamphetamine involved in Mr. Youngpeter's case. However, Mr. Youngpeter never received his hearing.

While Mr. Youngpeter awaited his evidentiary hearing, the district court conducted a similar evidentiary hearing for James Barnes, another one of Mr. Youngpeter's co-defendants. Like Mr. Youngpeter (and Robert Glover and David Wann), Mr. Barnes had filed a habeas petition challenging his sentence based on his counsel's failure to require the government to show that the methamphetamine at issue was D-isomer. And as with his co-defendants, we granted Mr. Barnes's petition and ordered the district court to conduct an evidentiary hearing.

---

[1]As of November 1, 1995, the "distinction between methamphetamine types has been eliminated and L-methamphetamine is now treated the same as D-methamphetamine under the Guidelines." Glover, 97 F.2d at 1347 n.2 (quotation omitted). However, because Mr. Youngpeter was sentenced in 1991, the D/L distinction applies in his case.

At Mr. Barnes's hearing, the government put on three witnesses: an Oklahoma narcotics officer, a DEA agent, and a DEA chemist. Mr. Barnes's attorneys briefly cross-examined each of these witnesses but offered no witnesses of their own. The government did not provide Mr. Youngpeter with notice or an opportunity to participate in Mr. Barnes's evidentiary hearing, which took place ten days after we had ordered the district court to conduct a similar evidentiary hearing for Mr. Youngpeter.

In its subsequent decision, the court concluded that the evidence introduced at this hearing established that the methamphetamine involved in Mr. Barnes's case was a combination of D- and L-isomers. Accordingly, the district court held that Mr. Barnes's prior sentence was proper and dismissed his § 2255 petition. See Glover, 97 F.2d at 1350 n.5 ("if the substance or mixture involved in the offense contained any detectable amount of D-methamphetamine, the defendant may be sentenced at the higher [D-isomer] level").

The district court then issued an order denying Mr. Youngpeter's request for an evidentiary hearing. The court reasoned:

> [S]ince Youngpeter was involved in the same conspiracy as Barnes, was charged in the same Count of the same Indictment as Barnes for conspiracy to manufacture, possess and distribute the same controlled substance, and since this Court has determined after an evidentiary hearing that the type of methamphetamine involved in said conspiracy was clearly the DL type, the Court concludes that to hold another hearing on the same issue involving the same controlled substance would be non-productive. . . . The evidentiary hearing held

4

with regard to Barnes' attack on the type of methamphetamine may be considered a "prior proceeding in the case" and, thus, the Court's finding as to the type of methamphetamine rendered after the Barnes hearing may be extended to Barnes' codefendants.

Rec. vol. I, doc. 311, at 3.

When Mr. Youngpeter filed a notice indicating that he intended to appeal the district court's decision, the district court refused to issue a certificate of appealability. Mr. Youngpeter then filed the present appeal.

**DISCUSSION**

Although the district court denied Mr. Youngpeter's most recent appeal because it believed that he was not entitled to a "certificate of appealability," our case law now provides that the certificate of appealability requirement applies only to habeas petitions filed on or after April 24, 1996, the date on which the Antiterrorism and Effective Death Penalty Act became effective. See United States v. Kunzman, 125 F.3d 1363, 1364-65 n.2 (10th Cir. 1997), cert. denied, ___ S. Ct. ___, 1998 WL 86544 (Mar. 30, 1998). Mr. Youngpeter filed his § 2255 petition with the district court in October 1994, well before the effective date of the AEDPA; thus, he need not obtain a certificate of appealability in order to pursue his appeal. See id. Moreover, because Mr. Youngpeter has made a sufficient showing of the denial of a federal right, we grant him a certificate of probable cause and proceed to the merits of his petition.

The Supreme Court has recognized "that the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant." Rushen v. Spain, 464 U.S. 114, 117 (1983) (per curiam). These "critical stages" are not limited to the guilt determination phase of a criminal trial; the Court has held that "sentencing is a critical stage of the criminal proceeding at which [a defendant] is entitled to the effective assistance of counsel." Gardner v. Florida, 430 U.S. 349, 358 (1977); see also Mempa v. Rhay, 389 U.S. 128, 134 (1967) (acknowledging the "critical nature of sentencing in a criminal case" and holding that defendants enjoy the right to counsel at deferred sentencing proceedings).

It is beyond question that the D-methamphetamine evidentiary hearing constituted a critical stage in this case. We ordered this hearing in order to require the government to prove a fact that is essential to support Mr. Youngpeter's 188-month sentence: that the 26½ pounds of methamphetamine at issue consisted, at least in part, of D-isomer methamphetamine. However, the denial of a hearing deprived Mr. Youngpeter of both his right to be present and his right to be represented during this hearing. Thus, he enjoyed neither the opportunity to contest the government's evidence nor to present any evidence of his own at this hearing. Nonetheless, the district court concluded that Mr. Youngpeter's rights had been adequately protected by the presence of Mr. Barnes

6

(Mr. Youngpeter's co-defendant) and Mr. Barnes's attorneys at the evidentiary hearing. The court reasoned that because it had already provided Mr. Barnes with a "full and fair hearing . . . regarding the common issue," the conclusions it reached "as a result of [Mr. Barnes's] hearing should extend to similarly situated codefendants who raise substantially the same argument." See Rec. vol. I, doc. 311, at 4.

To support its decision, the district court cited United States v. Reveron Martinez, 836 F.2d 684 (1st Cir. 1988). Similarly, in its terse response brief, the government called our attention to United States v. Diaz-Bastardo, 929 F.2d 798 (1st Cir. 1991). In both of these decisions, the First Circuit gave preclusive effect to prior decisions that other First Circuit panels had entered in co-defendants' cases, stating that "[i]f we are to enshrine fairness and predictability of results in the judicial process, then in a multi-panel circuit, newly constituted panels should normally consider themselves bound by prior panel decisions closely on point." Diaz-Bastardo, 929 F.2d at 799; accord Reveron Martinez, 836 F.2d at 687. However, in Mr. Youngpeter's case, we have no previous Tenth Circuit decisions to bind us. Thus, to the extent that the holdings of Reveron Martinez and Diaz-Bastardo rely on the existence of prior circuit precedent, we must distinguish them from the present case.

The Reveron Martinez and Diaz-Bastardo courts further stated that "especially in a criminal case, accepted principles of stare decisis militate strongly in favor of resolving identical points in the same way for identically situated defendants." 929 F.2d at 799; accord 836 F.2d at 687. The doctrine of stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." Payne v. Tennessee, 501 U.S. 808, 827 (1991). Although we recognize the importance of these interests, under the facts of this case, we hold that the principle of stare decisis cannot eclipse a defendant's right to be present and represented during critical stages of his sentencing.

Finally, we must examine whether we may excuse as harmless the district court's failure to provide Mr. Youngpeter with the evidentiary hearing that we ordered. The Ninth Circuit has held that "because the right to be present at one's sentencing proceeding is a 'fundamental' one that 'transcends the criminal process[,]' . . . a sentence that results from such a proceeding 'def[ies] analysis by "harmless-error" standards' and cannot be permitted to stand." Hays v. Arave, 977 F.2d 475, 481-82 (9th Cir. 1992) (quoting Arizona v. Fulminante, 499 U.S. 279, 309, 311 (1991)). Although Hays makes a powerful argument that a defendant's involuntary absence from his sentencing hearing can never be

8

harmless, because we conclude that Mr. Youngpeter's absence from the evidentiary hearing was not harmless, we need not reach the question of whether a defendant's involuntary absence from his sentencing hearing always requires us to vacate his sentence. Additionally, the particular facts of this case give us further reason to require Mr. Youngpeter's counseled presence at his evidentiary hearing.

Throughout the trial, sentencing, and prior appeals of Mr. Youngpeter and his co-defendants, the government consistently represented that it had never recovered the methamphetamine that was at the heart of the conspiracy and, hence, that it had never tested the chemical composition of that methamphetamine. For instance, in its brief in Mr. Youngpeter's prior appeal, the government stated, "[T]here was no recovered methamphetamine in this case. No laboratory test could be performed on the methamphetamine used to calculate the defendant's offense level." See Aplt's Brf. at 4. However, in 1997, on the eve of the evidentiary hearing in Mr. Barnes's case, the government revealed that it possessed records from 1989 that detailed the results of tests that it had run on the methamphetamine in question. See Rec. vol. II, at 28.

At Mr. Barnes's hearing, the government relied primarily on the testimony of Dr. William Kent Glanville, a DEA forensic chemist, to demonstrate that the methamphetamine that served as the basis of Mr. Barnes's conviction was D-isomer methamphetamine. Dr. Glanville's opinion hinged on the test results

9

reflected in the eight-year-old records. However, during his testimony, Dr. Glanville admitted that "I did not know that we even had--I even had a case file on this until I got here yesterday [the day before the hearing]. . . . Yesterday was the first time I learned that I'd actually analyzed some stuff in '89 concerning this case." Id. at 49.

Despite this seemingly damaging admission, the record demonstrates that Mr. Barnes's attorney failed to ask Dr. Glanville even a single question regarding how purportedly non-existent records could remain buried for eight years only to resurface conveniently on the eve of Mr. Barnes's hearing. In fact, the government did not offer any explanation regarding how these records could have vanished for eight years or how they could have magically reappeared in the nick of time. The trustworthiness of records offered under such circumstances is, at best, questionable, and the court should have afforded Mr. Youngpeter an opportunity to attack the credibility of these records. Because these records serve as the keystone of Mr. Youngpeter's sentence, we hold that the district court's refusal to afford Mr. Youngpeter the opportunity to challenge them did not constitute harmless error.

We are sympathetic to the need for judicial economy and uniformity. However, the district court could have achieved both of these ends by allowing Mr. Youngpeter and his other co-defendants to participate in Mr. Barnes's

10

hearing.  Such a consolidated hearing would have minimized the burden on the court's docket and eliminated the chance that multiple hearings on this same issue would yield conflicting outcomes.

## CONCLUSION

Mr. Youngpeter enjoyed both the right to be present and the right to be represented by counsel during the D-methamphetamine evidentiary hearing. Because Mr. Youngpeter never received the opportunity to exercise either right, and because the absence of Mr. Youngpeter and his attorney from the evidentiary

hearing was not harmless, we hereby REVERSE the judgment of the district court and REMAND this case for further proceedings consistent with this order and judgment.

The mandate shall issue forthwith.

Entered for the Court,


Robert H. Henry
Circuit Judge