**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 9 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

ROY GLOVER,

        Defendant-Appellant.

No. 99-5043
(D.C. No. 97-CV-22-C)
(N.D. Okla.)

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

MICHAEL ANTHONY
YOUNGPETER,

        Defendant-Appellant.

No. 99-5046
(D.C. No. 94-CV-1011-C)
(N.D. Okla.)

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

JOHNNY E. GLOVER,

        Defendant-Appellant.

No. 99-5051
(D.C. No. 97-CV-515-C)
(N.D. Okla.)

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

RANDY GLOVER,

     Defendant-Appellant.

No. 99-5054
(D.C. No. 97-CV-414-C)
(N.D. Okla.)

## ORDER AND JUDGMENT *

Before **KELLY**, **HENRY**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

These companioned appeals arise out of an underlying drug conspiracy involving a number of defendants, three of whom, Roy Glover, Randy Glover, and

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Johnny Glover, are now before this court seeking certificates of appealability (COA) in order to appeal the district court's dismissal of their motions to vacate, set aside, or correct an illegal sentence under 28 U.S.C. § 2255. Michael Youngpeter, the fourth defendant before this court, requests a certificate of probable cause (CPC), which we construe as a request for COA. See Fed. R. App. P. 22(b)(2). For the reasons that follow, we conclude defendants each have failed to make a "substantial showing of the denial of a constitutional right" and we deny their requests for COA. 28 U.S.C. § 2253(c)(2).

## I. Background

The underlying facts are discussed only as relevant; they have been set forth in prior decisions of this court. Facts that pertain only to a particular defendant are discussed in the context of that defendant's § 2255 motion only. In brief, defendants–some of whom are related–were convicted of participating in a drug ring that manufactured and sold methamphetamine. At trial and during sentencing (after conviction by jury or guilty plea), the government maintained that because it had not collected any samples from the crime scene, it did not perform any chemical analyses of the methamphetamine. Nevertheless, the district court sentenced all the defendants under the sentencing guidelines then in effect for d-methamphetamine, rather than the sentencing guidelines then in effect

for l-methamphetamine. [1] Subsequently, we remanded the § 2255 motions of two co-defendants, Robert Glover and David Wann (neither of whom are presently before us), and ordered the district court to hold an evidentiary hearing to determine whether the methamphetamine isomer was d- or l-. See United States v. Robert Glover, 97 F.3d 1345 (10th Cir. 1996). In that context, this court explained that it was the government's post-conviction "burden of proof and production to show by a preponderance of the evidence the type of methamphetamine involved in [defendants'] offenses." Id. at 1347 (quotation omitted).

In separate decisions postdating Robert Glover, we remanded three of defendants' § 2255 motions for a similar hearing–those of Randy Glover, Roy Glover, and Youngpeter. Based on this court's remands, the district court held an evidentiary hearing on February 23, 1999. These defendants were present at the hearing and represented by counsel (Roy Glover has subsequently become pro se). The government produced three witnesses: (1) Earl Beaver, an agent for the Oklahoma Bureau of Narcotics; (2) John C. Salley, a special agent for the Drug Enforcement Agency (DEA); and (3) Dr. William Kent Glanville, a senior

---

[1] At the time of defendants' sentencings, the sentencing guidelines in effect differentiated between l-methamphetamine and d-methamphetamine, treating the latter more harshly. See United States v. Robert Glover, 97 F.3d 1345, 1347 (10th Cir. 1996). The guidelines no longer distinguish between the two. See id at 1347 n.2.

forensic chemist employed by the DEA in Texas. The evidence at the hearing was the same as that presented by the government in earlier similar hearings.         See United States v. Youngpeter  , No. 97-5142, 1998 WL 171838, at **5 (10th Cir. April 13, 1998) (discussing Dr. Glanville's testimony in an earlier hearing).

As an initial matter, the district court denied defendants' outstanding motions to exclude forensic evidence and the hearing proceeded.  The first witness, Mr. Beaver, who helped execute a search warrant in April 1989, testified generally about defendants' clandestine methamphetamine laboratory.         See R., Vol. VIII at 6-35.  Next, Mr. Salley, also present when the search warrant was executed, testified that he collected chemical samples at the scene and sent them to the DEA's laboratory in Dallas for analysis.         See id. at 38-39; 43-44.  The government's last witness, Dr. Glanville, testified that he tested the substances sent by Mr. Salley by performing a mycrocrystal test, and found them to be d, l-methamphetamine.    See id. at 52-53.  He also testified that if a drug lab manufactures methamphetamine using the controlled substance phenyl-2-propanone–the "p2p" method–the result is production of both d- and l-methamphetamine, i.e., d, l-methamphetamine.      See id. at 49-51, 65.  According to Dr. Glanville, the substances recovered at the clandestine laboratory contained p2p, see id. at 55, and it is apparent from his testimony defendants were using the p2p method of methamphetamine production.      See id. at 49-56.  For sentencing

purposes, d, l-methamphetamine is treated the same as d-methamphetamine.       See

United States v. Decker  , 55 F.3d 1509, 1512-13 (10th Cir. 1995).

At the close of the hearing, the court questioned the government vigorously

why for eight years it had denied the existence of drug samples and chemical

analyses.  The government was not able to explain its lapse.  The district court

then ruled from the bench as follows:

> [I]t's clear that the evidence establishes beyond a reasonable doubt
> that this was a dl drug.
>
> It is exceedingly unfortunate that these tests were not made
> available, although I can only say from the little experience I've had
> in the law, that it was to [defendants'] benefit in the long run,
> because it made the prosecution more difficult.  I can't imagine the
> government not having brought this forward had they known about it.
> I was very interested as to why this occurred, but apparently nobody
> knows.  It must be one of those mysteries.
>
> But the Court must look to the evidence that's presented at this
> hearing.  That's the purpose of the hearing.  The sole and only
> evidence that's been presented is that the product from the residues
> that were found was methamphetamine, and it was a
> dl-Methamphetamine.  We're here, actually, because the sentencing
> commission at sometime in its wisdom came out with a differential in
> the sentencing guidelines that dealt with d and l-Methamphetamine.
> That's all been abolished now, because they have determined that it
> was kind of foolish from the first that they did that.  But that doesn't
> change anything.  These gentleman are entitled to those guidelines to
> be applied as they were at the time of the sentencing.
>
> But the evidence is conclusive.  It's the only evidence that's
> been brought before the Court that the methamphetamine that was
> under consideration of the prosecution and the conviction, and what
> the Court should have considered at the sentencing was a dl, a
> d guideline, sentencing guideline, and that's what the Court did.

I therefore deny the motions of the defendant[s] and state that the sentencing[s] as heretofor pronounced are correct under the evidence and under the law.

R., Vol. VIII at 93-94. Thereafter, the district court entered brief orders denying defendants' § 2255 motions.

## II. Michael Youngpeter

Youngpeter is the only defendant presently before us who filed his § 2255 motion in the district court before the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) took effect. His appeal, however, postdates AEDPA. Under United States v. Kunzman, 125 F.3d 1363, 1364 n.2 (10th Cir. 1997), this court does not require COA in these circumstances for appeals arising in either §§ 2254 or 2255 proceedings. The Supreme Court's recent decision in Slack v. McDaniel, 120 S. Ct. 1595, 1600 (2000), however, affects Kunzman and, in turn, Youngpeter. In Slack, the Supreme Court held that a petitioner in a state habeas proceeding under 28 U.S.C. § 2254 must now obtain a certificate of appealability if his appeal is filed after AEDPA's effective date, despite the fact that the petition was filed in district court prior to AEDPA. See id. at 1600, 1601. Although the Supreme Court's decision addresses a § 2254 habeas petition, and not a § 2255 motion, the Court construed AEDPA's § 2253 COA requirement in general terms. See id. at 1602-03. That section applies to both §§ 2255 and 2254 proceedings.

Based on the Supreme Court's superseding decision in Slack –which contradicts this court's holding in Kunzman –we do not apply Kunzman . See In re Smith , 10 F.3d 723, 724 (10th Cir. 1993) ("We are bound by the precedent of prior panels absent an en banc reconsideration or a superseding contrary decision by the Supreme Court."). A defendant, like Youngpeter, who files his § 2255 motion in district court before AEDPA's effective date, but files his appeal of the district court's denial of that motion in this court after AEDPA's effective date, must now obtain COA. Accordingly, we construe Youngpeter's request for CPC as a request for COA. [2] We note, however, that because Youngpeter's motion does not merit our issuance of COA, we would have reached the same result if we had conducted a full merits review of his § 2255 motion .

A jury convicted Youngpeter in September 1991 of conspiracy to manufacture, possess, and sell methamphetamine. He was sentenced to 188 months' imprisonment. He filed his § 2255 motion in 1994 alleging, among other things, that his trial counsel was ineffective because he failed to make the government prove at sentencing the specific type of methamphetamine involved in

_____

[2]     We further note that Youngpeter erroneously moved for CPC, which was never required of a § 2255 movant, but rather only of a pre-AEDPA § 2254 petitioner. See United States v. Lopez , 100 F.3d 113, 117 n.3 (10th Cir. 1996). Youngpeter's request for CPC was perhaps precipitated by our earlier decision in his case wherein we erred procedurally by granting CPC. See Youngpeter , 1998 WL 171838, at **2. Because of the Supreme Court's decision in Slack requiring COA, however, Youngpeter's request for CPC was prescient.

-8-

the conspiracy and failed to conduct a chemical analysis of the methamphetamine. We affirmed the district court's denial of that motion, based on the district court's factual finding that there was no way to conduct a chemical analysis because the government did not recover any methamphetamine.    See United States v. Youngpeter , No. 95-5179, 1996 WL 221386, at **1 (10th Cir. May 2, 1996).    We also held that Youngpeter failed to show that he was prejudiced by his attorney's alleged incompetence, again noting that without samples, drug tests could not be performed.   See id. at **2.

Subsequently, based on our intervening decision in     Robert Glover , 97 F.3d 1345, we recalled the mandate in Youngpeter's case, and remanded, directing to the district court to conduct an evidentiary hearing.    See Youngpeter , 1998 WL 171838, at **1.  Shortly after our remand, the district court held an evidentiary hearing on the same issue as to yet another of the defendants involved in the conspiracy, James Barnes, apropos to our remand of Barnes's § 2255 motion.    See id.  The evidence at Barnes's hearing established that the methamphetamine was a combination of d- and l-methamphetamine.    See id. at **2.  Instead of holding a separate hearing on remand of Youngpeter's § 2255 motion, the district court again denied the motion, applying the outcome of Barnes's hearing.    See id.  We found that denial deprived Youngpeter "of both his right to be present and his

right to be represented during this hearing." See id. at **3. Thereafter, the district court held the evidentiary hearing at issue in these companioned appeals.

Youngpeter now argues that the government's evidence at the February 23, 1999 hearing is barred by the doctrine of collateral estoppel. In particular, he argues that, because the district court accepted the government's representations that it did not recover any methamphetamine from the scene, and that it did not perform any drug tests, the district court made a "finding of ultimate fact." Appellant's Br. (Youngpeter) at 7. Hence, he asserts that "[b]ased on the doctrine of collateral estoppel the court cannot allow any party to reverse field and suddenly argue facts directly contradicting matters previously presented by that same party." Id. at 8.

Youngpeter is correct that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson , 397 U.S. 436, 443 (1970). In order to apply the doctrine of collateral estoppel, this court requires that:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Dodge v. Cotter Corp. , 203 F.3d 1190, 1198 (10th Cir. 2000).

Youngpeter's characterization of the district court's statement that the government did not recover any drugs, nor perform any chemical analyses, as a finding of "ultimate fact," is not correct. An ultimate fact is "a factual conclusion essential to the result."  Flavor Corp. of Am. v. Kemin Indus. Inc. , 493 F.2d 275, 280 n.5 (8th Cir. 1974) (distilling Judge Learned Hand's definition of the "ultimate fact" from  The Evergreens v. Nunan , 141 F.2d 927, 928 (2d Cir. 1944)); see also Black's Law Dictionary at 1522 (6th ed. 1990).  Here, the district court relied on the government's stated position.  Hence, the government's recovery of drug samples and testing was neither litigated nor adjudicated–for collateral estoppel purposes–until after the evidentiary hearings held apropos to this court's various remands.  See Dodge , 203 F.3d at 1198

Admittedly, there is something compelling about Youngpeter's argument. Its draw is based on the government's eight-year stance denying the existence of drug samples and chemical analyses until the eve of the first such evidentiary hearing.  This court has commented negatively on the government's last minute fortuitous discovery.  See Youngpeter , 1998 WL 171838, at **5 (noting as questionable the "trustworthiness of records" that "vanished for eight years" and "magically reappeared in the nick of time").  The district court's recitation of the government's earlier position, however, does not implicate the doctrine of collateral estoppel.  Rather, Youngpeter's argument falls within the doctrine of

-11-

judicial estoppel. Specifically, he seeks to estop the government from presenting evidence in the context of a § 2255 hearing, based on its proffer in earlier proceedings that the evidence did not exist. See Rascon v. U S West Communications, Inc., 143 F.3d 1324, 1330 (10th Cir. 1998) ("Judicial estoppel bars a party from adopting inconsistent positions in the same or related litigation." (quotation omitted)). This circuit has expressly rejected the doctrine of judicial estoppel. See id.

The district court, after numerous hearings, found that the government met its burden to show d-methamphetamine. In doing so, it necessarily credited the testimony of both the DEA agent who collected the samples and the DEA forensic chemist who tested the samples. In its decision, the district court stated that, although unexplained, the government's long delay did not prejudice defendants nor benefit the government. The district court did not err in allowing the forensic evidence and testimony concerning the type of methamphetamine underlying the conspiracy. Indeed, the district court fulfilled our specific mandate, directing it to hold an evidentiary hearing in order to determine the methamphetamine type. As this court stated earlier, "[i]f the government can establish that the substance was in fact d-methamphetamine, [defendants] obviously would not be entitled to resentencing." Robert Glover, 97 F.3d at 1350 (footnote omitted).

Accordingly, we deny Youngpeter's request for COA and dismiss his appeal.

### III.  Roy Glover

A jury convicted pro se petitioner Roy Glover in September 1991 of conspiracy to manufacture, possess, and distribute methamphetamine.  He was sentenced to 235 months' imprisonment.  On his appeal of the district court's denial of his § 2255 motion, this court granted COA on one issue, whether the sentencing court erred by using d-methamphetamine instead of l-methamphetamine to establish his base offense, and denied a certificate on his other issues.   This court then reversed and remanded for the same reasons discussed in Youngpeter's remand.   See United States v. Roy Glover, No. 97-5130, 1998 WL 544406, at **1 (10th Cir. Aug. 27, 1998),   cert. denied, 525 U.S. 1163 (1999).

Roy Glover argues the following on appeal:  (1)   the government withheld evidence in violation of various doctrines; (2) the government is barred from presenting forensic evidence at the hearing based on the doctrines of collateral estoppel and res judicata; (3) the district court did not properly exercise its supervisory powers to prevent Dr. Glanville's inconsistent and contradictory statements during the hearing; (4) the district court abused its discretion by allowing irrelevant testimony in violation of Fed. R. Evid. 702; (5) the district

-13-

court imposed a sentencing guideline in violation of the Ex Post Facto clause; (6) the district court should have granted his § 2255 motion because of conflicting statutory punishments; and (7) he was denied effective assistance of counsel because his counsel failed to perfect a timely notice of appeal, in his challenge of the district court's denial of a Fed. R. Crim. P. 33 motion for new trial based on new evidence.

We find that none of Roy Glover's issues merit COA and dismiss his appeal. Moreover, we note that some of Roy Glover's issues do not flow from our remand and, hence, they are barred as successive § 2255 motions. See 28 U.S.C. §§ 2244(a), 2255 . For this reason, we deny Roy Glover's motion to supplement the proceedings.

## IV. Randy Glover

A jury convicted Randy Glover of conspiracy to manufacture, possess, and distribute methamphetamine. He was sentenced to 292 months' imprisonment. We remanded Randy Glover's case for an evidentiary hearing for the same reason outlined in our discussion of Mr. Youngpeter's petition. See United States v. Randy Glover , No. 97-5239, 1998 WL 544408, at **1 (10th Cir. Aug. 27, 1998). Randy Glover now appeals from the district court's denial of his § 2255 motion after the evidentiary hearing.

Randy Glover's counsel has filed an _Anders_ brief, together with his amended motion to withdraw, in which he advises this court that Randy Glover's appeal has no merit. _See_ _Anders v. California_, 386 U.S. 738, 744 (1967) (requiring counsel to accompany a request to withdraw with "a brief referring to anything in the record that might arguably support the appeal"). Per Randy Glover's instruction, counsel has also filed a motion for appointment of new counsel under the Criminal Justice Act (CJA).

In response to counsel's _Anders_ brief, Randy Glover filed a pro se brief detailing why his appeal is not frivolous. He argues that: (1) COA is not required because of this court's earlier grant of a COA in his case; (2) the district court erred in permitting forensic evidence and should have collaterally estopped the government's evidence.

As to Randy Glover's first assertion, in its remand order, this court reversed the district court's judgment denying Randy Glover's § 2255 motion. _See_ _Randy Glover_, 1998 WL 544408, at **1. Therefore, when the district court entered its order after remand denying the motion after the hearing, that constituted the new "final order," the denial from which Randy Glover now seeks to appeal. To appeal that final order, he must obtain a new certificate of appealability. _See_ 28 U.S.C. § 2253(c)(1)(B). Randy Glover's second issue has

already been addressed above. Accordingly, we deny his requests for COA and new CJA counsel, and grant counsel's motion to withdraw.

## V. Johnny Glover

Next, we turn to Johnny Glover's § 2255 motion, which this court remanded for reasons not related to any of the above discussed motions. In 1991, Johnny Glover pled guilty to a methamphetamine crime and conspiracy to launder money and was sentenced to 150 and 60 months' imprisonment, respectively, the sentences to run concurrently. He did not appeal his conviction. Instead, he waited until May 29, 1997–approximately one month after AEDPA's one-year grace period had expired–to file his § 2255 motion. See United States v. Simmonds, 111 F.3d 737, 746 (10th Cir. 1997) (according one-year grace period to "prisoners whose convictions became final on or before April 24, 1996"). The district court found his motion time barred and dismissed it. Johnny Glover appealed that determination, arguing that the government created an impediment that caused him to file his motion late.

On his appeal of that decision, this court remanded his § 2255 motion with instructions to the district court "for findings regarding whether there was an impediment created by governmental action in violation of the Constitution or laws of the United States, and if it prevented [Johnny Glover] from filing his motion on time." United States v. Johnny Glover, No. 97-5158, 1998 WL

-16-

453674, at **1 (10th Cir. Aug. 5, 1998). We also left the district court free to consider equitable tolling arguments, granted Johnny Glover's certificate of appealability, vacated the district court's order denying the motion as time barred under the AEDPA, and remanded the case. See id. at **1 & n.2.

The main issue before the district court on remand was whether Johnny Glover's § 2255 motion was late because the government impeded its filing by not responding to his requests for information made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Although Johnny Glover's first request was in 1994, he did not receive the FOIA materials until approximately August 1997, after he had already filed his § 2255 motion. The district court held a hearing on December 17, 1998. The only witness who testified at the hearing was Johnny Glover, who was called by the government only in response to the district court's prodding. The evidentiary hearing did not reveal any new pertinent evidence on Johnny Glover's impediment claim.

The district court found that, because Johnny Glover was able to file his § 2255 motion before his receipt of the documents, there was no AEDPA impediment. See R., Vol. II, Doc. 398 at 3. The district court was not persuaded by Johnny Glover's argument that he could have filed a better § 2255 motion with the FOIA materials, and noted that the comprehensiveness of the motion filed by Johnny Glover belied his assertion. See id. at 3-4. Last, the district court found

no grounds for equitable tolling.    See id. at 5-6.  On appeal, Johnny Glover contends that:  (1) the government impeded or prevented his ability to file his § 2255 motion; (2) he diligently pursued the steps he thought necessary for filing his motion; and (3) equitable tolling applies.

We agree that there was no impediment and that the doctrine of equitable tolling does not apply.  AEDPA provides, in relevant part, that the one-year limitation period " shall run from . . . the date on which the impediment to making a motion created by the governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action."  28 U.S.C. § 2255.  Here, there was no government action in violation of the Constitution or the laws of the United States, nor an impediment that prevented the filing of the motion.  Moreover, Johnny Glover is not eligible for equitable tolling; he waited an extended period of time before filing his initial motion, and waited three years after his conviction to make his FOIA request.    See Miller v. Marr , 141 F.3d 976, 978 (10th Cir. 1998) (stating that only petitioners who diligently pursue their habeas remedies can benefit under the equitable tolling doctrine)    .  Because Johnny Glover's motion is time barred under AEDPA, we deny his request for COA.

## VI.  Conclusion

-18-

Accordingly, we: (1) DENY defendants' requests for certificates of appealability, and DISMISS their § 2255 motions; (2) GRANT Randy Glover's counsel's motion to withdraw (No. 99-5054); (3) DENY Randy Glover's application for new CJA counsel (No. 99-5054); and (4) DENY Roy Glover's "Motion for Leave of Court to Supplement Proceedings" (No. 99-5043)

Entered for the Court


Robert H. Henry
Circuit Judge