**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 3 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SANTIAGO CRUZ CAMACHO,

    Defendant - Appellant.

No. 96-6361

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA.
(D.C. No. CR-96-30-T)

---

M. Jay Farber, Assistant United States Attorney (Patrick M. Ryan, United States Attorney with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

David T. McKenzie, Oklahoma City, Oklahoma, for Defendant-Appellant.

---

Before PORFILIO, ANDERSON, and BALDOCK, Circuit Judges.

---

BALDOCK, Circuit Judge.

---

Defendant Santiago Cruz Camacho pled guilty to one count of conspiracy to possess with intent to distribute methamphetamine, three counts of possession with intent to distribute methamphetamine, eight counts of distribution of methamphetamine, and

two counts of money laundering, in respective violation of 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. § 1956(a)(1). The district court sentenced Defendant to concurrent sentences of 292 months imprisonment for the drug offenses and 240 months imprisonment for the money laundering offenses. On appeal, Defendant attacks only his sentences, arguing that the district court erroneously: (1) enhanced his sentence four levels on the basis that he was a leader and organizer of a conspiracy involving five or more participants; (2) calculated his base sentence level by improperly determining the amount of methamphetamine attributable to him; and (3) failed to award him a two-level sentence reduction for acceptance of responsibility. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

I.

In June 1995, a confidential informant notified the Drug Enforcement Agency of a large-scale drug conspiracy in Chickasha, Oklahoma. The informant's tip led to further investigation which indicated that Defendant and Jose Hernandez planned to bring large amounts of methamphetamine from California to Chickasha for distribution throughout the area. Under the plan, Hernandez provided the methamphetamine and Defendant arranged to transport it to Chickasha. Notably, Defendant did not carry the methamphetamine himself. Instead, he recruited and directed others to transport the methamphetamine to Chickasha, where upon arrival he distributed it to various dealers.

Between December 1994 and January 1995, the conspiracy[1] led and organized by Defendant and Hernandez distributed approximately twelve kilograms of methamphetamine. Defendant's role in the conspiracy ended, however, when en route to Chickasha from California, Arizona law enforcement officials stopped him for a routine traffic violation and discovered one pound of methamphetamine in his vehicle. Subsequently, the government named Defendant and numerous co-conspirators in the indictment which ultimately led to the sentences Defendant now appeals.

## II.

### A.

U.S.S.G. § 3B1.1(a) provides for a four-level enhancement where "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Defendant argues that the district court erroneously enhanced his sentence four levels pursuant to § 3B1.1(a). Specifically, Defendant maintains that enhancement under § 3B1.1(a) is appropriate only where the leader or organizer controls at least five co-conspirators. Defendant contends that the evidence before the court shows, at most, that he controlled no more than one co-conspirator and that his organization "was nothing more than a hit or miss operation involving large amounts of

---

[1] Defendant and Hernandez involved numerous individuals in their scheme including: Mario Salado, Priscilla Gonzales, Jeff Manning, Nicky Jarnagin, Carie Bolin, Lillian Bean, William Smith, Allen Day, Jan Kennedy, Scott Morgan, Todd Furra, Al Hooper, Reford Alcorn, Kim Hurd, Jimmy Wise, Jesus Navidad, and Miguel Nava.

methamphetamine." Therefore, he asserts that his sentence cannot be enhanced pursuant to § 3B1.1(a). We disagree.

The parties' briefs indicate confusion over whether we review the district court's finding that Defendant is an organizer or leader under § 3B1.1(a) de novo or for clear error. Indeed, a review of our precedent reveals cases supporting either position. See United States v. Yarnell, 129 F.3d 1127, 1138 (10th Cir. 1997). For example, we have stated that a district court's conclusion that a defendant is a leader or organizer under § 3B1.1(a) is *primarily legal*, and therefore reviewed de novo. United States v. Albers, 93 F.3d 1469, 1487 (10th Cir. 1996) (emphasis added) (citing United States v. Brown, 995 F.2d 1493, 1501 (10th Cir. 1993) (reciting standard of review in relation to conclusion that defendant was supervisor under § 3B1.1(b)). On the other hand, we have held that the "sentencing court's determination that the defendant was an organizer [under § 3B1.1(a)] is a *factual finding* subject to the clearly erroneous standard of review." United States v. Levine, 970 F.2d 681, 691 (10th Cir. 1992) (emphasis added); accord United States v. Owens, 70 F.3d 1118, 1127 (10th Cir. 1995); United States v. Knox, 124 F.3d 1360, 1365 (10th Cir. 1997). In light of this apparent conflict, we must determine which line of precedent controls our review in this case.

We have long reviewed sentencing decisions based on a defendant's role in a criminal enterprise under § 3B1.1 for clear error with respect to factual findings and de novo with respect to legal conclusions. E.g. United States v. Baez-Acuna, 54 F.3d 634,

4

638 (10th Cir. 1995) (Seymour, C.J.). The above cases are in accord with this general principle. The conflict between the two lines of precedent arises over whether a district court's determination that a defendant is a leader or organizer under § 3B1.1(a) is primarily legal or primarily factual. Although we recognize that the four-level enhancement provided for by § 3B1.1(a) is severe and deserves an appropriate level of scrutiny, we believe the role of a defendant as a leader or organizer is "among the sophisticated factual determinations a district court makes which depend upon an assessment of the broad context of the crime." United States v. Valencia, 44 F.3d 269, 272 (5th Cir. 1995). Therefore, we adhere to our earlier line of cases and review the district court's determination that Defendant was an organizer or leader of a criminal activity involving five or more persons for clear error.[2]

The standard of review we restate today is in accord with both the guidelines mandate that "[t]he court of appeals . . . shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts," see 18 U.S.C. § 3742(e), and the standard

---

[2] Moreover, even if we believed the district court's conclusion is properly reviewed de novo, we are bound by prior panel decisions in the absence of en banc reconsideration or a supervening Supreme Court decision. Haynes v. Williams, 88 F.3d 898, 901 n.4 (10th Cir. 1996). "A pertinent corollary to this principle is that when faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom." Id. The cases holding that we review the district court's conclusion that a defendant is a leader or organizer for clear error predate the cases holding that our review is de novo. Thus, we are bound to review for clear error regardless of which standard proves to be the wiser.

5

applied by a majority of the circuits.  See United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995) (holding that the district court's determination that defendant is leader or organizer is necessarily fact specific and is therefore reviewed for clear error.); United States v. Magana, 118 F.3d 1173, 1203 (7th Cir. 1997); United States v. Bueno-Sierra, 99 F.3d 375, 380 (11th Cir. 1996); United States v. Haun, 90 F.3d 1096, 1102 (6th Cir. 1996); United States v. Camper, 66 F.3d 229, 231 (9th Cir. 1995); United States v. Logan, 54 F.3d 452, 456 (8th Cir. 1995); United States v. Ronning, 47 F.3d 710, 711 (5th Cir. 1995); United States v. Richardson, 939 F.2d 135, 138 (4th Cir. 1991); but see United States v. Wisniewski, 121 F.3d 54, 57-58 (2d Cir. 1997) (holding that district court's conclusion that defendant is not a manager, supervisor, leader, or organizer involves legal interpretation of sentencing guidelines and is therefore reviewed de novo.).

The burden is on the government to prove, by a preponderance of the evidence, the facts necessary to establish a defendant's leadership role.  United States v. Torres, 53 F.3d 1129, 1142 (10th Cir. 1995).  In determining whether the government has proven that a defendant is a leader or organizer, a court may consider, *inter alia*, "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices . . . the degree of participation in planning or organizing the offense . . . and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1(a), comment. (n. 4).  The government does not have to prove that defendant

controlled five or more participants.[3]  Instead, it must prove that five persons participated in the criminal venture, and that Defendant exercised leadership control over at least one person.  United States v. Rodriguez, 112 F.3d 374, 377 (8th Cir. 1997); United States v. Valencia, 44 F.3d 269, 272 (5th Cir. 1995); United States v. Dota, 33 F.3d 1179, 1189 (9th Cir. 1994).  Because the criminal enterprise in this case clearly involved more than five persons, if Defendant exercised control consistent with his leadership role over at least one other participant, the district court's enhancement must stand.

The record overflows with evidence demonstrating Defendant's leadership role over Mario Salado.  Defendant recruited Salado, he directed his activities, he paid him, and he acknowledged before the district court that Salado was his employee.  The record also supports the district court's finding that Defendant controlled Jesus Navidad, Miguel Nava, and Jan Kennedy.  The government produced testimony which showed that Defendant recruited Navidad, Nava, and Kennedy and directed them to transport methamphetamine in furtherance of the conspiracy.  The record further supports the

---

[3]      In United States v. Reid, 911 F.2d 1456, 1465 n. 8 (10th Cir. 1990), we opined that "application of § 3B1.1(a) requires some control, directly or indirectly, over the five participants if the criminal activity is not 'otherwise extensive'".  In 1993, the Sentencing Commission added commentary note 2 to § 3B1.1.  The note reads in relevant part:"To qualify for an adjustment under this section, the defendant must have been an organizer, leader, manager, or supervisor of *one or more other participants*. . ."  U.S.S.G. § 3B1.1(a), comment. (n. 2) (emphasis added).  In light of this substantive change to the guidelines, we believe our language in Reid, which was proper in regards to the guidelines in place at that time, is no longer good law.  See Stinson v. United States, 508 U.S. 36, 42-43 (1993) (commentary to sentencing guideline, unless inconsistent with plain language of the guideline, is binding on federal courts.).

government's position that Defendant exercised a leadership role over Jeff Manning. Defendant directed Manning to arrange for his lodging and to pick him up at the airport when he visited Chickasha. Moreover, Defendant arranged for Manning to pick-up a quantity of methamphetamine in California and instructed him on how to obtain the drugs from the source. Finally, the evidence before the district court demonstrates that Defendant exercised a leadership role over Lillian Bean. At Defendant's direction, Bean removed drugs taped to Mario Salado's body, she picked Defendant and Salado up from the airport, she received shipments of methamphetamine for Defendant, she stored methamphetamine belonging to Defendant in her home, and she assisted Defendant in weighing shipments of methamphetamine. The government was bound to prove that five or more people participated in the criminal enterprise and that Defendant exercised a leadership role over at least one of them. It clearly met this burden.

B.

Defendant next argues that the district court incorrectly computed the amount of methamphetamine attributable to him when imposing his sentence. Specifically, Defendant complains that the evidence before the district court showed that less than ten kilograms of methamphetamine were attributable to him. Thus, he argues that the evidence is insufficient to support the category 36 sentencing level imposed by the district court. We disagree.

We review the district court's drug quantity calculation for clear error, and will not

8

disturb it absent no support in the record, or where upon review of the evidence we are firmly convinced that the district court made an error. United States v. Edwards, 69 F.3d 419, 438 (10th Cir. 1995). In calculating a defendant's base sentence level for participation in a drug conspiracy, the district court is not limited to the amount with which the defendant dealt personally. Id. Instead, the court may sentence the defendant based on the total amount of drugs "which he reasonably foresaw or which fell within the scope of his particular agreement with the conspirators." United States v. Ivy, 83 F.3d 1266, 1289 (10th Cir. 1996) (internal quotations omitted). The government must prove the quantities of drugs for sentencing purposes by a preponderance of the evidence and the evidence relied upon must possess a minimum indicia of reliability. Edwards, 69 F.3d at 438.

Testimony at the sentencing hearing regarding the amount of drugs attributable to Defendant varied widely. Defendant testified that he was involved in distributing only nine and one-half to ten pounds of methamphetamine. Government witnesses, however testified that approximately twenty-seven pounds were properly attributable to Defendant. After hearing the testimony and making adjustments for the witness' credibility, the district court attributed approximately twelve kilograms of methamphetamine to Defendant. The record supports the district court's finding. Accordingly, we reject Defendant's argument that the finding was clearly erroneous.

9

C.

Attempting to distinguish controlling Tenth Circuit precedent and relying largely on a case which an en banc Eleventh Circuit has vacated and decided contrary to his position[4], Defendant's final argument is that the district court erroneously refused to reduce his sentence two levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The district court noted that Defendant admitted the facts underlying the crimes charged by the government. The district court refused to reduce Defendant's sentence, however, because it found that Defendant "falsely denied and frivolously contested relevant conduct which the court found to be true." Defendant maintains that the district court's finding is clearly erroneous. We disagree.

The district court has broad discretion to determine whether to award a sentence reduction pursuant to § 3E1.1(a), and we will not disturb its decision absent clearly erroneous findings. United States v. Gassaway, 81 F.3d 920, 922 (10th Cir. 1996). Under U.S.S.G. § 3E1.1(a), a district court should reduce a defendant's sentence by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense . . . ." Thus, when a defendant admits the facts necessary to support his conviction, he should generally be awarded a reduction. Where a defendant acts in a manner inconsistent with acceptance of responsibility, however, the district court may properly

---

[4]    See United States v. Smith, 106 F.3d 350, 351, *vacated* 112 F.3d 473, *on reh'g en banc*, 127 F.3d 987 (11th Cir. 1997).

10

refuse to reduce his sentence. United States v. Contreras, 59 F.3d 1038, 1040-41 (10th Cir. 1995). A "defendant who falsely denies or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." Id. (internal quotations omitted).

The district court found that the "Government proved by a preponderance of the evidence that defendant was accountable for approximately twelve kilograms of methamphetamine." Contrary to the government's proof, Defendant testified that he was responsible for only four or five kilograms of methamphetamine. The district court specifically found that Defendant's testimony was not credible and that he "falsely denied and frivolously contested" the amount of drugs attributable to him. Based on the record before us, we conclude that Defendant significantly understated the amount of drugs properly attributable to him. Accordingly, the district court committed no clear error by refusing to reduce his sentence two levels pursuant to § 3E1.1(a).


AFFIRMED.