**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSE GUADALUPE ALTAMIRANO,

    Defendant - Appellant.

No. 97-2171

(D.C. No. CR-96-220-JC)

(D. New Mex.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **McKAY**, and **EBEL**, Circuit Judges.

Defendant Jose Altamirano[1] was convicted of conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine.  In this appeal, he challenges only his sentence, alleging that the court erroneously sentenced him as a leader of the conspiracy and erroneously included five pounds of methamphetamine in its calculation of his sentence.

On June 18, 1996, Defendant, along with ten co-defendants, was indicted in

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]We note that, according to the record, Jose Altamirano and Joe Altamirano are the same person; Defendant was indicted as Joe Altamirano.

a superseding indictment on three counts arising from drug trafficking activities in California and New Mexico. Count I charged conspiracy to possess with intent to distribute one kilogram and more of a substance containing methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, and it named as defendants Joe Altamirano, Kenneth Brown, Michael Clark, Alfred Ellick, Ulysses Harper, Christopher Lee, Bryant Marshall, Burch Woody McCoy, Mary Sanchez, Ricardo Vera, and Melanie Young. Counts III and V charged Defendant and several of his co-defendants with possession with intent to distribute 100 grams and more of a substance containing methamphetamine on two different occasions in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) and 18 U.S.C. § 2. Defendant was tried with Mr. Ellick, Mr. Harper, Mr. Marshall, and Mr. McCoy.[2] On January 31, 1997, a jury convicted Defendant on Count I for conspiracy and on Count V for possession with intent to distribute methamphetamine on June 14, 1996, but found Defendant not guilty of Count III, the count of possession with intent to distribute methamphetamine on April 6, 1996.[3] Defendant was sentenced to 292 months'

---

[2]The record indicates that Mr. Brown, Mr. Clark, and Ms. Young testified at trial pursuant to plea agreements and that, at the time of trial, Mr. Lee and Ms. Sanchez were fugitives. Mr. Vera pled guilty to Counts I and III of the Superseding Indictment but did not testify at trial.

[3]Defendant's convictions stem from his involvement with a methamphetamine distribution ring in Roswell, New Mexico, and California in 1995 and 1996. A detailed explanation of the underlying facts is set out in a companion case, United States v. Harper, No. 97-2153, 1998 WL 794972 (10th Cir. Nov. 16, 1998).

imprisonment for each count, to run concurrently, and two concurrent terms of supervised release. He appeals the district court's calculation of his sentence, alleging two sentencing errors.

Defendant first contends that he was erroneously sentenced for the five pounds of methamphetamine that was seized from co-defendants Mr. Harper and Mr. Lee at an Amtrak station in San Bernadino, California, in June 1995. He argues that the evidence at trial did not show that he was involved in the conspiracy at that time and that the hearsay statements of Mr. Lee are unreliable and should not have been considered by the sentencing court.

We review a sentencing court's drug quantity calculation for clear error. See United States v. Edwards, 69 F.3d 419, 438 (10th Cir. 1995), cert. denied sub nom. Chaplin v. United States, 517 U.S. 1243 (1996). In a drug conspiracy case, the court may sentence a defendant not only for any amount with which a defendant dealt personally but also for any amounts which "'were reasonably foreseeable to the defendant and within the scope of his conspiratorial agreement.'" Id. (citations omitted). The government must prove the quantity of drugs by a preponderance of the evidence, using evidence with at least a minimal indicia of reliability. See id.; see also United States v. Cruz Camacho, 137 F.3d 1220, 1225 (10th Cir. 1998).

The presentence report attributed a total of 4.81 net kilograms of

methamphetamine to Defendant.  Under the 1995 United States Sentencing

Guidelines which governed this case, a quantity of at least 3 but less than 10

kilograms of methamphetamine resulted in a base offense level of 34.  See United

States Sentencing Guidelines § 2D1.1(c)(3) (1995).[4]  The presentence report then

increased Defendant's base offense level by four levels to 38 to reflect

Defendant's role as a leader and equal partner with Mr. Vera in the

methamphetamine distribution organization, which involved more than five

participants.  See R., Vol. III at 11; U.S.S.G. § 3B1.1(a).  The district court

adopted the presentence report's findings and guideline applications and found

that the offense level was 38 and the criminal history category was III.  The

guidelines recommended a sentence in the range of 292-365 months'

imprisonment.  See U.S.S.G. Ch. 5, Pt. A (Sentencing Table).  Accordingly, the

court sentenced Defendant to the minimum term of 292 months for each count.

In determining that it was proper to include the five pounds of

methamphetamine from the June 1995 incident in Defendant's sentence

calculation, the court agreed with the government that "conspirators are

responsible for foreseeable amounts dealt by co-conspirators."  R., Vol. II at 7.

We disagree with the court's broad statements that, "[i]f you join a conspiracy,

---

[4]We apply the 1995 version of the guidelines throughout this order and judgment.

-4-

you're liable for everything that happened before and you're liable for everything up until the time that you drop out of the conspiracy. If you join an ongoing conspiracy, you're stuck with everything that went on beforehand." Id.; see U.S.S.G. § 1B1.3, commentary at n.2 (stating that a defendant cannot be sentenced for conduct committed by co-conspirators before he joined the conspiracy). Nevertheless, we cannot say that the court erroneously included the five pounds of methamphetamine seized on June 14, 1996, from Mr. Lee and Mr. Harper in Defendant's sentence calculation.

Our review of the record indicates that the five pounds of methamphetamine was sufficiently linked to Defendant to support the court's sentence. At the sentencing hearing, Agent Woodson testified that Mr. Lee told him that an individual by the name of "Joe" had supplied Mr. Lee with the five pounds of methamphetamine which was seized on June 14, 1995, and with the one pound which was seized on April 4, 1996. He also testified that Mr. Lee had provided agents with phone numbers for "Ricardo" and "Joe" and had disclosed that the "Joe" who brought two pounds of methamphetamine to Mr. Lee in Roswell, New Mexico, was the same "Joe" to whom Mr. Lee introduced Agent Woodson by telephone, namely, Defendant. At trial, the evidence indicated that the phone number for "Joe" was Defendant's phone number. Agent Woodson also testified at sentencing about statements from co-conspirator Mr. Clark. He

testified that Mr. Clark said that he knew Defendant was involved with the five pounds of methamphetamine because "Joe Altamirano and Ricardo Vera were partners in the distribution of methamphetamine" at the time of the June 1995 seizure, R., Vol. II at 11-12, and because Mr. Vera had told him about the loss of the five pounds of methamphetamine. Mr. Clark also testified at trial about Defendant's involvement with Mr. Vera, which further supports a finding that Defendant was involved in the conspiracy at the time the five pounds of methamphetamine was seized from Mr. Lee and Mr. Harper in California.

Moreover, we agree with the government that the sentencing court can rely on hearsay information at sentencing, even if it contains only minimal indicia of reliability. See United States v. Knox, 124 F.3d 1360, 1366 (10th Cir. 1997) (stating that sentencing court legitimately considered hearsay testimony in determining that defendant was an organizer or leader of criminal activity); United States v. Lopez, 100 F.3d 113, 120 (10th Cir. 1996) (same). Based on our review of the record, Agent Woodson's hearsay testimony contained the necessary indicia of reliability. The information provided by Mr. Lee to Agent Woodson was corroborated by other testimony at trial. Moreover, Agent Woodson personally observed Mr. Lee and his demeanor. We cannot say that either the court's finding that the agent's testimony was credible or its reliance on that testimony was erroneous. Consequently, we see no clear error in the court's

inclusion of the five pounds of methamphetamine in Defendant's sentence.

Defendant also challenges the four-level enhancement of his base offense level pursuant to United States Sentencing Guidelines § 3B1.1(a). The court increased Defendant's offense level by four points because it found that Defendant was a leader or organizer of the conspiracy which involved at least seven participants. See R., Vol. II at 20; U.S.S.G. § 3B1.1(a). Defendant argues that the court's determination that he was a leader or an organizer is erroneous because it is not supported by reliable evidence. Specifically, he asserts that Mr. Lee's debriefing statements are not reliable and that no other evidence was presented at trial which supports the court's finding. We review the district court's finding that Defendant is a leader or organizer under section 3B1.1(a) for clear error. See Cruz Camacho, 137 F.3d at 1223-24; Edwards, 69 F.3d at 439.

A court may impose a four-point enhancement against a defendant if it finds that he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). To determine whether the government has proven that a defendant is an organizer or leader, the court may consider several factors including

> the exercise of decision making authority, the nature of participation
> in the commission of the offense, the recruitment of accomplices, the
> claimed right to a larger share of the fruits of the crime, the degree of
> participation in planning or organizing the offense, the nature and
> scope of the illegal activity, and the degree of control and authority
> exercised over others.

Id. § 3B1.1, commentary at n.4; see also Cruz Camacho, 137 F.3d at 1224.

Accordingly, the gravamen of the enhancement is either the exercise of control over other participants or the organization of "others for the purpose of carrying out the crime." Edwards, 69 F.3d at 439 (citations omitted). At a minimum, the government must prove that "five persons participated in the criminal venture, and that Defendant exercised leadership control over at least one person." Cruz Camacho, 137 F.3d at 1224 (citing Eighth, Fifth, and Ninth Circuits cases agreeing with this proposition); see also United States v. Lacey, 86 F.3d 956, 967 (10th Cir.), cert. denied, __ U.S. __ , 117 S. Ct. 331 (1996).

Defendant does not dispute the court's finding as to the number of persons involved in the conspiracy; he only contests the court's finding that he was a leader or an organizer. As we discussed previously, Agent Woodson testified at sentencing that Mr. Clark stated that Defendant and Mr. Vera were partners who worked together in the distribution of methamphetamine. We repeat here that the court's admission of Agent's Woodson's hearsay testimony, with its minimal indica of reliability, was not erroneous. See Knox, 124 F.3d at 1366.

Evidence at trial also supports the court's four-level enhancement. Mr. Clark testified at trial that he lived with Mr. Vera in California for a period of time during which he helped Mr. Vera cut and distribute methamphetamine. Mr. Clark testified that he knew Defendant through Mr. Vera and that Defendant

traveled with Mr. Vera to New Mexico to distribute one-quarter pound of methamphetamine. He also testified that he drove Defendant and Mr. Vera to the bus station and that Defendant had the bus tickets. A jury could reasonably infer from this testimony that Defendant played some role in organizing the trip to New Mexico.

Other evidence in the record shows that Defendant exercised leadership control in the conspiracy. Co-defendant Mr. Brown testified at trial that he and Ms. Sanchez picked up Defendant and Mr. Vera in Flagstaff and drove them to Roswell to what he believed were methamphetamine transactions. According to the record, Defendant used Ms. Sanchez' cell phone to call persons later known to be undercover agents to set up a transaction. Mr. Brown further testified to another instance when he drove Mr. Altamirano and Mr. McCoy from Gallup, New Mexico, to Albuquerque to a methamphetamine transaction. Undercover agents arrested Defendant, Mr. Brown, Mr. McCoy, and Ms. Sanchez at this transaction. A jury could reasonably infer from this evidence that Defendant exercised control over at least two other participants in the conspiracy, namely Mr. Brown and Ms. Sanchez. In light of this evidence, we conclude that the court's sentence enhancement for Defendant's role as an organizer or leader was

not clearly erroneous.  We therefore affirm Defendant's sentence.

AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge