**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 26 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RUBEN CUEVAS, a/k/a Harley,

      Defendant-Appellant.

No. 00-5034
(D.C. No. 98-CR-172-003-K)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL**, and **BRISCOE**, Circuit Judges.

Defendant-Appellant Ruben Cuevas appeals the district court's decision to impose a three-level enhancement for being a "manager" or "supervisor" pursuant to United States Sentencing Guidelines § 3B1.1(b). We find that the district court's decision was not clearly erroneous, and thus we AFFIRM. Because we affirm the enhancement under U.S.S.G. § 3B1.1, we need not reach the second issue Cuevas presents for appeal. (See Aplt. Br. at 1, 5 (conceding Issue II (drug quantity) as moot if this court affirms Issue I).)

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

Ruben Cuevas (a.k.a. "Harley") pled guilty to participating in a drug conspiracy to possess with intent to distribute marijuana in excess of 1,000 kilograms. On the basis of testimony from FBI Special Agent Keith Kohne, the district court concluded that Cuevas exercised supervisory discretion within the conspiracy and controlled at least one other participant. The district court's finding that Cuevas was a "manager" or "supervisor" for purposes of U.S.S.G. § 3B1.1 is factual and thus is reviewed for clear error. See United States v. Cruz Camacho, 137 F.3d 1220, 1223-24 (10th Cir. 1998) (noting and resolving an intra-circuit split on the question of whether a finding of "organizer" or "leader" under § 3B1.1 is factual (and thus reviewed for clear error) or legal (and thus reviewed de novo)); see also United States v. Spears, 197 F.3d 465, 468 (10th Cir. 1999) (following Cruz Camacho and reviewing for clear error); United States v. Tagore, 158 F.3d 1124, 1130 (10th Cir. 1998) (same).

In approximately 1994, Jorge Hernandez-Mata and Manuel Pena Garcia began a large-scale marijuana distribution network that moved thousands of pounds of marijuana from Mexico through Texas and to the upper-Midwest, e.g., central Michigan, northern Indiana, and Illinois. The Mata-Garcia organization involved about twelve people, including Cuevas. There were three stages to moving the marijuana from producer to consumer: (1) transporting it from Mexico

to Waller, Texas (near Houston); (2) packaging and transporting it from Texas to the distribution states; and (3) distributing it and collecting the money from sales. For stage two, couriers would either fly shipments from small airfields in Texas to others in Michigan or drive the shipments north using tractor-trailer trucks. Flights would carry two- to three-hundred pounds, while typical truck-loads would move two-hundred fifty pounds (93.25 kilograms). At the time the organization was in business, marijuana was selling in the upper-Midwest for about $500 - $700 per pound. Thus, a shipment of two-hundred fifty pounds could generate about $150,000 (250 x $600).

Cuevas began working for the Mata-Garcia organization in early to mid-1997. But see Vol. III at 7-8 (stating that in January or February 1996 Severiano Aguilar introduced Cuevas to pilot-courier Steven Moore as Moore's "connection or the person [Moore] will be contacted by for further trips"). The record reveals that Cuevas had several responsibilities. First, when marijuana would arrive in Texas from Mexico, either Cuevas or Hernandez-Mata would receive it. Either one or both of them would then re-weigh and re-package it. They would wrap it in plastic wrap, put it in suitcases, and place other things in the suitcases to try to disguise the smell. Then either Cuevas or Hernandez-Mata would pay those who helped package the marijuana for shipment. Marcos Perez was one of those workers who did the packaging.

Once the shipments were ready for transport, often Cuevas would call co-conspirator Steven Moore, a pilot, and, using code words, communicate where and when the shipment was to be picked up and where it was to be delivered. Moore flew about fifteen trips from Texas to Lansing, Michigan, each time carrying approximately two- to three-hundred pounds (74.6 to 111.9 kilograms) of marijuana. Cuevas initiated every conversation with Moore; the only time Moore called Cuevas was when Moore was responding to a page from him. During the time the Government had a wiretap on Moore's phone, the FBI overheard about ten conversations between Cuevas and Moore and only one between Hernandez-Mata and Moore. Except for Moore's first flight, which occurred before Cuevas had joined the organization, Cuevas paid Moore for his work.

Cuevas was also involved in the final leg of distribution: picking up the shipments when they arrived in Michigan, distributing them to local dealers, and collecting money earned on the sales. From Texas, Cuevas would fly commercial airlines to Michigan. Pilots, like Moore, would contact Cuevas once they arrived in Michigan. Cuevas would call co-conspirators to tell them when and where a shipment would arrive and where to deliver it. Moore reported that Cuevas would decide, in cooperation with salespersons in the area, where shipments would be distributed. Cuevas would also collect and re-count the money earned from sales. Normal collections ranged from thirty- to fifty-thousand dollars in cash. After

being counted, the money would be boxed and sealed. It would then be shipped back down to southern Texas by means of one of the organization's couriers.

During 1997 to 1998, Marcos Perez worked for the Mata-Garcia organization in and around Houston, Texas. Perez packaged and loaded the marijuana for shipment north. According to Special Agent Kohne, Perez knew and took instructions from Cuevas.

Co-conspirator Gilberto Quesada was involved in at least seven tractor-trailer deliveries to Michigan, each load carrying about two-hundred fifty pounds (93.25 kilograms). Quesada's job was to collect proceeds from the sale of marijuana in Lansing, Michigan. Cuevas was Quesada's contact with the Mata-Garcia organization. On many occasions when Quesada collected the revenue, Cuevas accompanied him and was the one actually handling the money.

In June 1998, Missouri Highway Patrol discovered 561 pounds of marijuana in a tractor-trailer truck being driven by Hector Melchor. Melchor admitted that he had picked up the marijuana in Houston, Texas, and was to be paid $10,000 upon delivery to Chicago, Illinois. Three to four months later, Cuevas, Moore, Mata, Garcia, and others had dinner at Jamil's Restaurant in Tulsa, Oklahoma. They discussed Melchor's arrest and how to provide him with legal representation.

In the fall of 1998, police obtained a warrant to search the home of co-conspirator Victor Carlos Riojas-Valadez. Police found Valadez hiding in the basement with about fifty pounds of marijuana. Police stopped a car, driven by co-conspirator William Mills, which was leaving Valadez's house when the police arrived to search. Cuevas was the passenger in Mills's car. A search of the car turned up about $66,000: $65,000 in a bag at Cuevas's feet and over $1000 in Cuevas's pocket. To the police officers, Cuevas called this money "pocket change."

Special Agent Kohne related a statement from Brad Renville, a pilot-courier, saying that Cuevas was the contact-person for couriers upon arriving in Michigan. According to Kohne, an FBI wiretap confirmed that Cuevas gave Renville "command and control communication" regarding drug deliveries. Renville stated that, in his opinion, Cuevas was "a step above Steven Moore in the chain of command."

Special Agent Kohne recounted how everyone in the Mata-Garcia conspiracy knew Cuevas, either by his name or by the nickname "Harley," and they recognized Cuevas's picture on sight. In response to questioning from the bench, Kohne opined that, in his experience, only persons who are "well-trusted, well-thought of in the organization" collect and count the money from drug sales. Finally, Kohne testified, over defense counsel's objection, that, in his opinion,

Cuevas "fit in right under Jorge Hernandez-Mata, inasmuch as he was the one that would be there instead of Jorge Hernandez-Mata when he was not present."

**DISCUSSION**

The burden rests on the Government to prove by a preponderance of the evidence the facts necessary to establish defendant's managerial role under U.S.S.G. § 3B1.1. See United States v. Cruz Camacho, 137 F.3d 1220, 1224 (10th Cir. 1998). We review for clear error the sentencing court's finding that a defendant was a "manager" or "supervisor" of criminal activity involving five or more participants. See id. at 1223-24. It is undisputed that the criminal drug conspiracy of which Cuevas was a part involved five or more participants.

Cuevas challenges the district court's finding that he was a manager or supervisor, contending instead that he played merely a clerical or administrative role. A supervisor is "one who exercised some degree of control over others involved in the commission of the offense or must have been responsible for organizing others for the purpose of carrying out the crime." United States v. Allemand, 34 F.3d 923, 931 (10th Cir. 1994) (alterations omitted) (citing United States v. Roberts, 14 F.3d 502, 524 (10th Cir. 1993) (stating that a manager or supervisor must have "decision-making authority or control over a subordinate"); United States v. Reid, 911 F.2d 1456, 1464 (10th Cir. 1990) ("Key determinants

of the applicability of § 3B1.1 are control or organization . . . .")). "[T]he gravamen of [§3B1.1] is control, organization, and responsibility for the actions of other individuals . . . ." United States v. Anderson, 189 F.3d 1201, 1211 (10th Cir. 1999). To qualify as a manager or supervisor under § 3B1.1 a defendant need manage or supervise only one participant. See Cruz Camacho, 137 F.3d at 1224.

The district court did not clearly err in rejecting Cuevas's contention that he played merely a clerical or administrative role and finding instead that he was a manager or supervisor for purposes of § 3B1.1(b). The court found that, at the least, Cuevas controlled Perez. Furthermore, the court found that there was also evidence that Cuevas controlled Moore and Quesada, too, and that he certainly exercised management responsibility over property assets and other activities of the criminal organization.

There is ample support for these findings. When a marijuana shipment would arrive from Mexico, Cuevas would often receive, weigh, and package it for further transport north. Cuevas instructed and paid Perez for his work at this stage. Cuevas would contact Moore, the principal pilot-courier, and tell him when and where to pick up a shipment, and where to deliver it. Although there were conflicting statements as to whether Cuevas ranked above Moore in the organization, the district court could certainly have concluded that he did.

Cuevas paid Moore and controlled virtually all the information flowing from the organization to Moore. Finally, when the marijuana arrived in Michigan, Cuevas directed co-conspirators, like Quesada, as to when and where to pick it up and where and to whom to deliver it. In addition, Cuevas was responsible for collecting and counting the sales proceeds.

Cuevas's involvement mirrors the sort of control and authority we have found to be sufficient in other cases. For example, in United States v. Green, 175 F.3d 822, 833 (10th Cir. 1999), we found that the district court did not err in giving a § 3B1.1(b) "manager" enhancement based on evidence that the defendant was the "gatekeeper to the money," distributed the drug for further distribution, and "inform[ed] others as to what steps they should take for transmission of the money back to California [the organization's headquarters]."

Therefore, we conclude that the district court did not clearly err when it found Cuevas to be a "manager" or "supervisor" under U.S.S.G. § 3B1.1(b). Consequently, we AFFIRM.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge