FILED
United States Court of Appeals
Tenth Circuit

October 29, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEONARD DOUGLAS LADURON,

Defendant-Appellant.

No. 09-3376
(D.C. No. 2:08-CR-20055-KHV-1)
(D. Kan.)

ORDER AND JUDGMENT[*]

Before **TYMKOVICH**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

Leonard Douglas LaDuron pleaded guilty to conspiracy to commit mail fraud, wire fraud, and making false statements, in violation of 18 U.S.C. §§ 371, 1341 and 1343.[1] At sentencing, the district court applied a four-level

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] LaDuron also pleaded guilty to one count of making false statements under 18 U.S.C. § 1001, based on his submission of false information in support of an application for rental housing assistance through the Department of Urban

(continued...)

enhancement to LaDuron's base offense level under USSG § 3B1.1(a) because it found he was a leader or organizer of an extensive criminal conspiracy involving at least five participants. The court relied on this enhancement to sentence LaDuron at the high end of the Guidelines range, to fifty-seven months' imprisonment. On appeal, LaDuron argues there was insufficient evidence to support the enhancement for his role in the conspiracy. Exercising our jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

I.

The conspiracy resulting in LaDuron's fraud conviction involved the federal government's E-Rate Program. Administered by the Schools and Libraries Division of the non-profit Universal Service Administrative Company ("USAC"), the E-Rate Program provides subsidies to schools and libraries for use in gaining internet access. A school applies to USAC for a grant under the program and, if its application is accepted, USAC pays vendors directly for the cost of setting up the school's internet program. One of the program's core requirements is that each applicant school contribute some of its own funds towards establishing internet capability. The percentage of this copayment varies depending on the school's level of need, but even a modest copayment obligation

---

[1](...continued)
Development's Choice Voucher Program. He does not appeal his sentence for this conviction, however, and his violation of § 1001 has no bearing on this appeal.

-2-

is strictly enforced. The government explains that requiring even a modest copayment from the schools is necessary to discourage wasteful spending. The copayment acts as an incentive to schools to negotiate with equipment and service providers for the lowest rates and ensures that schools purchase only the infrastructure enhancements that they truly need.

LaDuron became familiar with the program in 1998 working for National Technology Services, an E-Rate service provider. He left that company in late 1998 or early 1999 and started his own E-Rate consulting company, Elephantine Corporation, as well as two internet service providers, Myco Technologies, Inc. and Serious ISP. Elephantine, which LaDuron staffed with his wife and mother, solicited schools to participate in the E-Rate program and then prepared and submitted the applications to USAC.

In 1999 LaDuron met Benjamin Rowner and Jay H. Soled, co-owners of DeltaNet, another internet service provider, and the three men hatched a plan to deprive USAC of school copayments under the E-Rate Program. Under the scheme, which for purposes of this discussion can be distilled to its basic components, Elephantine would solicit a school to participate in the program by promising that it would not have to make its copayment. Once a school was on board, Elephantine would prepare a fraudulent application, typically including an inflated school budget and fictional vendor bids, for submission to USAC. The application unfailingly designated DeltaNet, Myco, and/or Serious ISP as the

school's internet service provider. USAC, upon approving the application, would then pay that service provider the government's share of the cost under the program. Unbeknownst to USAC, however, and contrary to the copayment obligation imposed on each participating school, DeltaNet actually funded many of the schools' copayments. LaDuron and his co-conspirators masked the source of the funds by channeling the money through Serious ISP, which, in turn, forwarded the money to the schools under the guise of donations. The schools would then use the "donated" money to fund their copayments. Of course, the donated money originated from USAC, which paid it to DeltaNet in the first place as compensation for services provided under the program. Since only a fraction of that compensation was needed to fund the schools' copayments, the result was huge profits for DeltaNet and the other service providers. The illegal scheme lasted from 1999 to 2003, when, as is often the case, the conspirators had a falling out over their ill-gotten gains. By that time, USAC had paid LaDuron's companies over $890,000.

In April 2008, LaDuron, Rowner, and Soled were charged with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.[2] Rowner and Soled pleaded guilty pursuant to plea agreements. Each of them stipulated that he "was a manager or supervisor of a criminal activity that involved five or more

---

[2] For her part in the conspiracy, LaDuron's mother Mary Jo LaDuron was charged with, and pleaded guilty to, making a false statement, in violation of 18 U.S.C. § 1001. She was fined and sentenced to two years probation.

participants and was extensive in nature, resulting in a three-level increase for his role in the offense under USSG § 3B1.1(b)."[3]  R. Vol. 3 at 8.

LaDuron entered his guilty plea without the benefit of a plea agreement.  At sentencing, the government requested a four-level enhancement under § 3B1.1(a) based on LaDuron's role as an organizer and leader of the conspiracy.  In its sentencing memorandum, the government first ensured the court that there were at least five criminally culpable participants in the fraudulent scheme, including "two Elephantine employees and one Serious ISP employee as well as the defendant, Benjamin Rowner, and Jay Soled."  *Id.* Vol. 1 at 43 (internal quotation marks omitted).  The government argued that LaDuron clearly exercised control over his companies' employees.  As an example, it submitted evidence showing that in October 2002, Erik Chaney, a Serious ISP employee, followed LaDuron's direction to submit false documentation to USAC on behalf of a participating school.  LaDuron was also charged with occupying a leadership role in his dealings with Rowner and Soled.  The government argued that they were dependent on LaDuron because he had sole responsibility for soliciting the targeted schools and convincing school officials to sign contracts with DeltaNet.  The government also argued that the conspiracy was by its very nature "otherwise

---

[3]     Section 3B1.1(b) provides for a three-level increase "[i]f the defendant was a manager or supervise (*but not an organizer or leader*) and the criminal activity involved five or more participants or was otherwise extensive."  (emphasis added).

extensive" within the meaning of § 3B1.1(a). It emphasized the intricate funneling of money between DeltaNet, Serious ISP, and the participating schools so as to mislead USAC into believing that the schools had met their copayment obligations. And it noted that the schools themselves had been drawn into the conspiracy unwittingly by paying DeltaNet with what the schools believed were donated funds.

LaDuron countered that a four-level enhancement for his role in the scheme was unjustified. He conceded that his role was essential to the conspiracy's operation, but he insisted that he did not exercise control over Rowner and Soled, which he claimed was critical to a four-level enhancement under § 3B1.1. LaDuron argued that his co-conspirators "did not defer to [him] and were not under [his] control." R. Vol. 1 at 53. To the contrary, he claimed that "they operated independent[ly] of [him] on many fronts and even became adversarial to him on financial matters at the end of the conspiracy . . . ." *Id.* He reminded the court that his co-conspirators had pleaded guilty to being managers or supervisors of the conspiracy, not, he argued, subordinate roles. In any event, LaDuron noted that no more than three people had been found criminally responsible for the offense, and thus the government failed to show that the conspiracy involved five or more participants. He argued that he deserved, at most, a two-level enhancement under § 3B1.1(c).

The district court rejected LaDuron's arguments, going so far as to say it was "a really easy call to find that [he] was an organizer or leader of a criminal activity that involved five or more participants and was otherwise extensive." R. Vol. 2 at 97. The court acknowledged the culpability of Rowner and Soled and found that they shared "equal responsibility in terms of the manager or supervisor enhancement." *Id.* at 98. But it concluded that each conspirator, including LaDuron, "organized and led the part of the conspiracy for which he had responsibility." *Id.* In addition to LaDuron, Rowner, Soled, and LaDuron's mother, the court found that Chaney had "knowingly" participated in the criminal enterprise, thus bringing the number of conspirators to at least five. *Id.* at 98. Finally, the court found that the presentence report "more than adequately detail[ed]" an otherwise extensive criminal conspiracy within the meaning of § 3B1.1(a). *Id.* Based on these conclusions, the court granted the government's request for a four-level enhancement, which resulted in an offense level of twenty-three and a recommended forty-six to fifty-seven month term of imprisonment.

II.

"We review [LaDuron's] sentence for reasonableness, giving deference to the district court under the familiar abuse-of-discretion standard." *United States v. Hamilton*, 587 F.3d 1199, 1219 (10th Cir. 2009) (internal quotation marks omitted). LaDuron does not appear to challenge the substantive reasonableness of

his sentence. That is, he makes no argument that the length of his sentence, fifty-seven months, is unreasonable in light of the factors enumerated in 18 U.S.C. § 3553(a). Rather, he challenges the procedure by which the court arrived at his sentence, arguing that it had no basis to apply the four-level enhancement. Under these circumstances, our review is limited to determining "whether the district court improperly calculated the Guidelines range." *Id.* (internal quotation marks and brackets omitted). "In evaluating the application of a Guidelines enhancement, we review factual findings for clear error, but to the extent the defendant asks us to interpret the Guidelines or hold that the facts found by the district court are insufficient as a matter of law to warrant an enhancement we must conduct a de novo review." *Id.* at 1222.

An enhancement under § 3B1.1(a) is warranted only if (1) the defendant was an "organizer or leader" of the criminal activity, and (2) the criminal activity involved at least five participants *or* was otherwise extensive. As to the first prong, it is enough if the evidence reveals that the defendant supervised at least one other participant. *Id.*; *see also United States v. Cruz Camacho*, 137 F.3d 1220, 1224 (10th Cir. 1998). "This is not a particularly onerous showing," and need not be proven with specific examples. *Hamilton*, 587 F.3d at 1222. In this case, the district court did cite specific examples, including LaDuron's control over his wife and mother in their capacity as Elephantine employees. In addition, Erik Chaney held himself out as an employee of Serious ISP and he too took

-8-

orders from LaDuron. This alone is sufficient to label LaDuron as an organizer or leader, regardless of the nature of his relationship with Rowner and Soled. We also note that the roles played by those defendants, and whether they too were leaders and organizers or only managers and supervisors, does not affect LaDuron's sentence. The comments to § 3B1.1 clarify that multiple people can qualify as a leader or organizer of one criminal conspiracy. Indeed, it appears that all three of the main conspirators in this case would qualify for a four-level enhancement under § 3B1.1(a). But of course, Rowner and Soled had the benefit of their plea agreement and the government's concession that their roles were limited to managing and supervising, rather than leading and organizing. The government made no such concession in LaDuron's case, and we see no error in the district court's assessment of his role under § 3B1.1.

Finally, we ask whether the conspiracy involved at least five participants or was otherwise extensive. LaDuron insists the conspiracy involved less than five people and he challenges the district court's conclusion as to Chaney's role, arguing the evidence on this score was "ambiguous." Aplt. Br. at 17. The comments to § 3B1.1 define a participant as someone who is criminally responsible for the commission of the offense even if he was not criminally convicted. *United States v. Scott*, 529 F.3d 1290, 1303 (10th Cir. 2008). Chaney was found to have met this definition because he followed LaDuron's order to submit false information to USAC on behalf of the River Run school in October

-9-

2002. According to the district court, Chaney's conduct likely supported grounds for a criminal charge and, at a minimum, made him a "participant" for purposes of § 3B1.1(a). This finding was not clearly erroneous, and as LaDuron does not challenge any other individual's categorization as a participant, the number of participants stands at five. Consequently, we need not review the district court's alternative ruling that the conspiracy was otherwise extensive.

III.

The district court's enhancement of LaDuron's sentence under USSG § 3B1.1(a) is AFFIRMED.

Entered for the Court

John C. Porfilio
Senior Circuit Judge