**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 9, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PEDRO CANDELAS, a/k/a Victor
Rueda, a/k/a Hector Martinez, a/k/a
Jose Flores, a/k/a El Gallo,

Defendant - Appellant.

No. 10-5089

(N.D. Oklahoma)

(D.C. No. 4:09-CR-00053-CVE-4)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **TACHA**, and **BRORBY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

Defendant and appellant, Pedro Candelas, pled guilty to conspiracy to

possess heroin with intent to distribute, in violation of 21 U.S.C. § 846 and 21

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

U.S.C. § 841(a)(1) and (b)(1)(B)(i). He was sentenced to ninety-seven months' imprisonment, followed by sixty months of supervised release. Arguing that the district court made various errors in calculating his sentence, Mr. Candelas appeals that sentence, which we affirm.

## BACKGROUND

Beginning approximately in December of 2008, the Tulsa Police Department received information from a confidential informant ("CI") that the CI had purchased heroin from Mr. Candelas on four occasions. Mr. Candelas's live-in girlfriend, Sylvia Silva, acted as the translator for the transactions.[1] While Mr. Candelas and Ms. Silva lived in New Mexico, in these transactions the heroin was delivered to Tulsa via United Parcel Service and payment was made by means of a Money-Gram.

On January 9, 2009, Mr. Candelas agreed, through Ms. Silva, to sell the CI one-half pound of heroin for $8,800. Rafael Zanabria and Felipe Gallardo-Gallegos transported the heroin to Tulsa for Mr. Candelas. Mr. Candelas paid them $800 for their services, and provided $340 to purchase gas for the trip and a hotel room.

---

[1]While Mr. Candelas could only speak Spanish, Ms. Silva was fluent in both Spanish and English. The two also had a daughter together.

Accordingly, on January 15, 2009, Mr. Zanabria, his wife (Maria Perez) and Mr. Gallegos transported the one-half pound of heroin from Los Lunas, New Mexico, to Tulsa. Mr. Zanabria and Mr. Candelas stayed in contact with each other via cell phone during the trip so that Mr. Candelas could monitor the progress of the trip and give instructions to Mr. Zanabria.

Once the trio arrived in Tulsa, Mr. Zanabria contacted the CI from the parking lot of a Wal-Mart store and informed the CI that he was in a silver Oldsmobile. The CI and an undercover police officer accordingly drove to the Wal-Mart, as did a surveillance team of Tulsa police officers. When Mr. Zanabria observed that police officers were present, he concluded that the drug transaction was a set-up and attempted to leave the parking lot. Ultimately, police officers stopped Mr. Zanabria, Mr. Gallegos and Ms. Perez as they drove out of the parking lot. The Tulsa officers discovered a package of approximately 198.30 grams of heroin hidden in the front of Mr. Gallegos's pants. Mr. Zanabria and Mr. Gallegos were both arrested. As it turned out, Ms. Perez was unaware of the planned drug transaction and was later released without being charged.

On April 10, 2009, an initial indictment was filed charging Mr. Zanabria and Mr. Gallegos with engaging in a conspiracy to possess with intent to distribute 100 grams or more of heroin, beginning in mid-November 2008 and continuing until January 15, 2009. On June 2, 2009, a superceding indictment was filed adding Ms. Silva to that same heroin conspiracy. On June 8, 2009, both

Mr. Gallegos and Mr. Zanabria pled guilty to the conspiracy count. Mr. Gallegos was sentenced to time served and was released to Immigration and Customs Enforcement for deportation proceedings. Mr. Zanabria was sentenced to thirty-three months' imprisonment.

While Mr. Candelas had not yet been indicted on felony heroin conspiracy charges, he was sentenced on August 6, 2009, in New Mexico to nine years' imprisonment, eight of them suspended, based upon an arrest on state heroin-related charges in January 2007, for which he had failed to appear for sentencing. Meanwhile, on October 7, 2009, Ms. Silva pled guilty to the superceding indictment alleging the same criminal conspiracy as the one to which Mr. Gallegos and Mr. Zanabria had pled guilty. She ultimately was not sentenced to any prison time. On December 7, 2009, Mr. Candelas was finally named in a sealed one-count second superseding indictment, also charging that from mid-November 2008 until January 15, 2009, he conspired with Ms. Silva, Mr. Zanabria, Mr. Gallegos and others to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(i). He was still serving his sentence in New Mexico state prison when he was indicted on the federal charge.

On January 12, 2010, Mr. Candelas was released from incarceration in New Mexico and was promptly arrested on the federal heroin conspiracy charge. He pled guilty on April 8, 2010.

The sentences of Ms. Silva, Mr. Zanabria and Mr. Gallegos are not at issue in this appeal; only Mr. Candelas challenges his sentence, although he argues that the sentences of his co-defendants are relevant to certain of Mr. Candelas's arguments.

In preparation for sentencing Mr. Candelas under the advisory United States Guideline Commission, Guidelines Manual (2009) ("USSG"), the United States Probation office prepared a presentence report ("PSR").[2] The PSR concluded that Mr. Candelas's initial offense level was 26, and then added a 4-point upward adjustment pursuant to USSG §3B1.1(a) because he was "the leader or organizer of a heroin distribution conspiracy which involved the knowing participation of at least five participants," and a 2-point increase because Mr. Candelas "attempted to obstruct the administration of justice with respect to the investigation of the instant offense by attempting to threaten, intimidate or unlawfully influence a co-defendant." PSR ¶¶ 19, 20, R. Vol. 2 at 216.[3] After a

_____

[2]The Probation Office obviously prepared a PSR in preparation for the sentencing of each of Mr. Candelas's co-conspirators, but, as indicated above, they are not relevant to this appeal.

[3]This latter adjustment for obstruction of justice is based upon the finding in the PSR that, prior to being indicted and arrested on the instant offense, Mr. Candelas "contacted Silva's mother to relate a message to Silva that she was to keep quiet or her daughter would be in danger. Additionally, Candelas sent Danny Calleja, a criminal participant within Candelas' heroin distribution organization, to find Silva. The aforementioned conduct was an indirect attempt to affect the outcome of the instant offense by threatening, intimidating, or otherwise unlawfully influencing a co-defendant." PSR ¶ 14, R. Vol. II at 215.

3-point reduction for acceptance of responsibility, Mr. Candelas's total adjusted offense level was 29 which, when combined with a criminal history category of II, yielded an advisory sentencing guidelines range of 97 to 121 months.

Mr. Candelas filed a sentencing memorandum, objections to the PSR, and a motion for a downward departure or variance. In his sentencing memorandum, Mr. Candelas argued he should be given credit for his time served in state prison, arguing that had he been indicted immediately after the arrest of Mr. Zanabria and Mr. Gallegos, "he could have pleaded guilty early on, and would have been eligible for a concurrent sentence with the undischarged New Mexico state sentence." Def.'s Sentencing Mem. at 2, R. Vol. 1 at 23. He also argued that he was not a leader or organizer and that the district court failed to sentence him with a view to avoiding sentencing disparities between him and his co-conspirators.

Mr. Candelas's objections to the PSR reiterated his arguments about not being a leader or organizer and failing to be given credit for time served in New Mexico. Finally, his motion for a downward departure or variance relied upon the identical arguments.

The district court rejected Mr. Candelas's argument that he was not a leader or organizer, and also agreed with the PSR that he had obstructed justice by threatening Ms. Silva. It further rejected his arguments regarding receiving credit or a downward departure or variance based on his previously discharged state

sentence and his argument that his sentence reflected unwarranted sentencing disparities.  Mr. Candelas was accordingly sentenced to ninety-seven months' imprisonment, at the bottom of the advisory Guideline sentencing range.  This appeal from his sentence followed.

**DISCUSSION**

Mr. Candelas argues that the district court erred in:  (1) finding he was the leader or organizer of the heroin conspiracy; (2) finding that he obstructed justice; (3) refusing to consider giving him credit for the time he served in New Mexico; and (4) failing to consider "unwarranted sentencing disparities" when it sentenced him.  Appellant's Op. Br. at 5.

"We review [Mr. Candelas's] sentence for reasonableness, giving deference to the district court order under the familiar abuse-of-discretion standard." United States v. Hamilton, 587 F.3d 1199, 1219 (10th Cir. 2009) (internal quotation marks omitted).  While his brief is less than pellucid, it appears he does not challenge the substantive reasonableness of his sentence.  That is, he makes no argument that the length of his sentence, ninety-seven months, is unreasonable in light of the factors enumerated in 18 U.S.C. § 3553(a).  Rather, Mr. Candelas challenges on four specific grounds the procedure by which the court arrived at his sentence.  In such a situation, our review is limited to determining "whether the district court improperly calculated the Guidelines range."  Hamilton, 587

F.3d at 1219 (internal quotation marks and brackets omitted). "In evaluating the application of a Guidelines enhancement, we review factual findings for clear error, but to the extent the defendant asks us to interpret the Guidelines or hold that the facts found by the district court are insufficient as a matter of law to warrant an enhancement, we must conduct a de novo review." Id. at 1222.

## I. Leader or Organizer:

An enhancement under USSG §3B1.1(a) is warranted only if (1) the defendant was an "organizer or leader" of the criminal activity, and (2) the criminal activity involved at least five participants *or* was otherwise extensive. With respect to the first part of the enhancement, it is sufficient if the evidence reveals that the defendant supervised at least one other participant. Id. comment. (n.2); see also United States v. Cruz Camacho, 137 F.3d 1220, 1224 (10th Cir. 1998). "This is not a particularly onerous showing," and need not be proven with specific examples. Hamilton, 587 F.3d at 1222.

In this case, the court did, however, provide specific examples, including that "the defendant recruited and directed couriers, directed others in their duties, and arranged the drug transactions, to include setting the price of the heroin and payment of the couriers." Tr. of Sentencing Hr'g at 53, R. Vol. 3 at 59. And the court specifically rejected Mr. Candelas's main argument, repeated here on appeal, that Ms. Silva was the true leader or organizer, finding that she merely

"operated within the conspiracy as the defendant's interpreter thereby enabling the defendant to arrange drug transactions with non-Spanish speakers." Id.

The court also rejected Mr. Candelas's argument that the conspiracy did not involve five participants, stating as follows:

> The Court finds by a preponderance of the evidence, both from the exhibits attached to the response to the objections, the exhibits received today here in open court, and the testimony of Sylvia Silva, as well as what the Court knows from the allocutions of Mr. Rafael Zanabria and Felipe Gallegos, that the defendant was the organizer and leader of a criminal activity that involved more than five participants, to include Pedro Candelas, Sylvia Silva, Rafael Zanabria, Felipe Gallardo-Gallegos, Danny Calleja, and others.

Id. These findings were not clearly erroneous. Accordingly, we affirm the district court's enhancement based on Mr. Candelas being the leader or organizer of a conspiracy involving at least five participants.

## II. Obstruction of Justice:

The Guidelines regarding obstruction of justice provide as follows:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

USSG §3C1.1. Once again, the district court specifically made findings on this enhancement:

> Specifically, the defendant contacted Silva's mother and threatened to harm Silva or her children if she talked to the police. Further, the defendant sent Danny Calleja, a criminal participant

within the defendant's heroin distribution organization, to find Silva. The defendant's objection to the obstruction of justice is overruled.

We discern no error in this finding either, which was amply supported by the record and Ms. Silva's testimony.

### III.  Failure to Give Credit for Time Served in State Prison:

Mr. Candelas next argues that the government deliberately waited until almost a year following the arrests of his co-conspirators, and some six to eight months after his co-conspirators were indicted, to indict him on the same conspiracy charge.  He further avers that the government knew that, during that time period, he was serving a sentence in New Mexico state prison on similar state heroin-related charges, and that prosecutors deliberately delayed his indictment so that he would not be afforded the chance to serve his federal sentence concurrently with his state sentence.  This argument is meritless.

In support of his argument, Mr. Candelas relies upon a recent decision of our court, United States v. Fay, 547 F.3d 1231 (10th Cir. 2008), in which we observed as follows:

> The sentencing Reform Act of 1984, 18 U.S.C. § 3551 et. seq., 28 U.S.C. §§ 991-98, contains a series of provisions governing various aspects of sentencing.  Among those provisions is 18 U.S.C. § 3584(a), which provides that, "if a term of imprisonment is imposed on a defendant who is already subject to an *undischarged* term of imprisonment, the terms may run concurrently or consecutively[.]" The district court in the present case concluded that the statute's use of the modifier "undischarged" signaled that Congress did not intend to allow a district court to direct that a new

-10-

prison term run concurrently with a completed, or *discharged*, prison term.

Id. at 1235. This provision does not mandate that sentences run concurrently, even if one is undischarged; it simply says they may do so. Furthermore, it is indisputable that Mr. Candelas's state sentence was discharged by the time he was sentenced to his current sentence. Finally, as the district court noted, "[t]he conduct relevant to the state conviction is considered prior criminal history, not relevant conduct, and therefore [is] not appropriate for a sentence offset under" the Guidelines. Tr. of Sentencing Hr'g at 62, R. Vol. 3 at 68.

**IV. Sentencing Disparities:**

Finally, Mr. Candelas makes a very brief argument that the district court erred in rejecting his request in his sentencing memorandum to consider sentencing disparities between himself and his co-conspirators. He points out that Ms. Silva received no prison time; Mr. Gallegos was sentenced to time served; and Mr. Zanabria was sentenced to thirty-three months. By contrast, he received a ninety-seven month sentence. The district court specifically addressed and rejected this argument, stating that "the Court finds that sentencing disparities between defendants was created by cooperation agreements with the government and substantial assistance reductions for which the defendant should not receive an equal benefit because he did not provide substantial assistance." Id. There is nothing erroneous about that determination.

## CONCLUSION

For the foregoing reasons, the sentence is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge